## DANIEL ROBERTS *v.* A. H. GRISWOLD.

*Guaranty.    Consideration.    Notice.    Partnership.*

The plaintiff having been retained by G. as his counsel in a law suit, and having already rendered services therein, the defendant, in a letter to the plaintiff, stated that he would hold himself accountable that G. should pay the plaintiff for all the services he had or might render him in such suit. An action having been brought upon this guaranty, and the case having been referred, the referee reported that the plaintiff in reliance upon this guaranty continued his services in the suit upon the faith that the defendant would pay agreeably to the terms of the letter; and, also, that the defendant expected and understood the plaintiff would continue his services in the suit after the letter was written, according to its terms. *Held,* that there was a sufficient consideration for the guaranty; that it sufficiently appeared that the defendant had notice of its acceptance by the plaintiff; that it was not necessary that the consideration of the guaranty should be expesssed in writing; and that the guaranty covered both the past and future services of the plaintiff in the suit, and also his disbursements for the ordinary clerk and court fees therein.

*Held,* also, that the fact that by the terms of a law co-partnership formed by the plaintiff subsequent to the guaranty, but before the performance of the plaintiff's services upon the faith thereof, his partner was entitled to share with him in the pay for such services, constituted no ground of defence to the plaintiff's action upon the guaranty, the plaintiff having personally rendered all the legal services contemplated by it.

ASSUMPSIT upon a guaranty. The cause was referred, and the referee reported the following facts :

The plaintiff's claim was for services and disbursements as attorney and counsellor, in the defence of a suit in favor of one Sheldon against Daniel B. Griswold, brother of the defendant. The disbursements charged in the plaintiff's account amounted to nine dollars and sixty-four cents, and consisted of cash paid the fees of the clerk of the court in respect to such suit during its pendency. The referee found that the plaintiff's charges were for services actually rendered, and disbursements made, in such suit, and that they were reasonable and proper, and no objection was made to them by the defendant in that respect, but the defendant claimed before the referee that he was under no liability to the plaintiff for any part of his account.

The plaintiff was originally retained in said suit as attorney by Daniel B. Griswold at its commencement, in 1847. At that time the plaintiff resided in Manchester, in this state, where he

Roberts v. Griswold.

remained till 1855, when he removed to Burlington. Daniel B. Griswold resided in Benson, in this state, from 1847 till 1855, when he removed to Michigan, where he resided up to the hearing before the referee in 1861. The defendant had always resided in Whitehall, N. Y. The plaintiff's account was charged to Daniel B. Griswold until November 1st, 1855, when the plaintiff formed a co-partnership with L. E. Chittenden, in business as attorneys, and after that time, the charges were made on the books of Roberts & Chittenden, to the present defendant, A. H. Griswold. The plaintiff alone rendered the services charged in his account, but by the terms of co-partnership between him and Chittenden, Chittenden had an equal interest with the plaintiff in so much of the account as accrued after they became partners.

The plaintiff and defendant previously to October, 1855, had considerable correspondence in reference to the said suit between Sheldon and Daniel B. Griswold, in which correspondence the plaintiff very persistently urged the defendant to pay him his account for services and disbursements in that cause. On the 24th of October, 1855, the defendant wrote the plaintiff a letter, which was claimed by the plaintiff to contain the guaranty upon which this action was brought. In it, after reciting the disappointment of his brother in not receiving some fifteen hundred dollars which he expected, and upon which the defendant had based his previous verbal assurance of the plaintiff's getting his pay, the defendant used the following language : " *I can assure you that he* (referring to Daniel B.) *is perfectly good, and will hold myself accountable that he shall pay you for all the services you have or may render him in the suit with Sheldon.*

The defendant after this letter of October 24th, 1855, in reply to numerous dunning letters from the plaintiff, still referred the plaintiff to his brother, Daniel B, for payment, and the plaintiff after that wrote two letters to said Daniel B., at his residence in Michigan, agreeably to the defendant's suggestions. From and after the receipt by the plaintiff of the letter of the defendant of October 24th, 1855, the plaintiff relied upon the defendant's engagement contained in that letter, to pay his bill of services in said suit; and his services therein subsequent thereto

were rendered upon the faith that the defendant would pay agreeably to the terms of that letter ; and the defendant expected and understood that the plaintiff would continue his services in the suit after that letter was written, according to its terms.

The defendant insisted before the referee, that he was in no manner liable to defend, or pay the expenses of, the suit of Sheldon against Daniel B. Griswold, or in any manner interested in the defence thereof, except what the law would imply from his letter of October 24th, 1855 ; that the plaintiff never gave the defendant any notice that he relied upon any guarantee of the defendant ; that the services rendered after the letter of October 24th, 1855, were rendered by him while he was a partner of, and in connection with, Chittenden, and were charged directly to the defendant without his knowledge ; that such guarantee was without consideration and no intimation was ever given by the plaintiff to the defendant or Daniel B. Griswold, that the plaintiff would render no more service upon the credit of Daniel B., in that suit ; and further, that if the referee should find that the letter of the defendant of October 24th, 1855, contained any guarantee at all, it was simply a conditional guarantee of the soundness and continued responsibility of Daniel B. Griswold.

The cause was tried by the court upon this report, at the April term, 1862, PIERPOINT, J., presiding. The county court pro forma rendered judgment for the defendant, to which the plaintiff excepted.

The plaintiff, pro se.

L. Underwood, for the defendant.

BARRETT, J. The defendant's liability, which the plaintiff seeks to enforce in this suit, is claimed to be created by his letter of October 24th, 1855. The expression, constituting the alleged guaranty, is the same as to the then past services of the plaintiff, as to services thereafter to be rendered by him in the suit of Sheldon v. Daniel B. Griswold. Hence, so far as the terms used are concerned, the defendant assumed the same liability for the

past as for the future services of the plaintiff. Though it was urged before the referee, it is not claimed in the argument before this court, that the guarantee extends only to the responsibility of the said Daniel B. Griswold; and the argument has proceeded upon the ground that it undertakes for the ultimate payment of the plaintiff's charges. But it is now urged that no such consideration is shown, as is necessary to give validity to the guaranty. The terms of the guaranty imply that it was in the contemplation of the defendant, that the plaintiff was thereafter to render further services in the same suit; and the report expressly states. that "the defendant expected and understood that the plaintiff. would continue his services in said suit after said letter was written according to the terms of said letter." The letter closes by saying that "He" (said Daniel B.) "expects to be able to get another trial, and if he can have a fair one he must certainly come off triumphant." Now "the terms of said letter," according to which "the defendant expected and understood that the plaintiff would continue his services," were that the defendant would hold himself accountable that he (the said Daniel B.) should pay the plaintiff or all the services he had or might render, in the suit with Sheldon.

The consideration then, so far as it consisted in the rendering of future services, went to the entire undertaking of the defendant, and gave it the same effect in fixing his liability to pay for the past, as for the future services. The report also shows that from and after the receipt of said letter, the plaintiff relied on the defendant's engagement, and the services subsequent thereto were rendered upon the faith that the defendant would pay agreeably to the terms of said letter. So far then as the matter rested in the understanding and expectation of the parties, there was entire concurrence between them.

It is not denied that the rendering of future services may be a good consideration to uphold a promise to pay for services already rendered. But it is well understood that in order to bind the defendant upon his proposition, it must appear that he was notified of the plaintiff's acceptance of it and reliance upon it. We think this amply appears. The language above quoted, that "the defendant *expected and understood* that the plaintiff would con-

Roberts v. Griswold.

tinue his services in said suit after said letter according to the terms of said letter," necessarily involves the fact that the defendant had been so informed by or in behalf of the plaintiff. There is no accounting for his expectation and understanding otherwise. The proposition having thus been made and accepted, and the defendant notified of such acceptance, when the services were in fact rendered in reliance upon said engagement of the defendant, and upon the faith that he would pay agreeably to the terms of said engagement, the duty of the defendant to pay according to said engagement would seem to be consummated and fixed.

But it is claimed again that the consideration should appear in writing in order to give validity to the guaranty. This must either mean that the acceptance of the defendant's proposition must be in writing, or a correlative undertaking on the part of the plaintiff to render future services must have been in writing.

We can readily understand that this might be required in some cases, as when the guaranty itself did not embody substantially the material and effective terms of the contract, and where resort to parol evidence would be necessary in order to show what the contract was in its terms and effect. But we do not understand that this has ever been required, when all that is to be done by the other party is merely to accept the proposition in the terms in which it is made, and to perform the consideration either by paying or doing the thing proposed. In the present case the services thereafter to be rendered constitute the consideration, and this is clearly indicated on the face of the defendant's proposition.

As to the point taken in argument, that the consideration is exhausted by the promise to pay for future services, and inasmuch as it is not shown that the plaintiff would not have performed them without the guaranty of the defendant and on the sole credit of his brother, it is sufficient to say that it appears affirmatively that the consideration goes to and affects the entire undertaking of the defendant, as has been before shown. This being so, the plaintiff had no occasion to go further and show negatively, that he would not have performed the future services, except upon the condition that the defendant would pay him for the past as well as for the future services.

Roberts *v.* Griswold.

The defendant claims that " it was the plaintiff's duty to set-tle and adjust his account with the principal, or at least, attempt to do so, before he called on the surety." Without discussing the correctness of this position, we think the case shows that the plaintiff substantially performed that alleged duty. The report states that " the defendant, after said letter of October 24th, still referred the plaintiff to his brother, Daniel B., for payment, and the plaintiff after that wrote two letters to said Daniel B. at Michigan, where he now resides, requesting payment of his bill, but has never received any pay from him on his said account. These letters were written to Daniel B. in 1859 and 1860 by the plaintiff agreeably to the suggestion of the defendant who referred him to Daniel B.," which sufficiently implies that the plaintiff sent his bill to said Daniel B., as the basis of his request for payment of it. And it moreover shows that he did in this respect what the plaintiff required of him, for he acted " agreeably to sugges-tions of the defendant." We think, therefore, the case shows that the plaintiff did all that was necessary to entitle him, even under the defendant's view, to fall back on the guaranty.

It is further insisted in behalf of the defendant, that, by reason of the formation of the partnership between the plaintiff and Mr. Chittenden, on the 1st of November, 1855, *the plaintiff* per-formed no services for which he could recover, in his own name, and so, as a result, he has not executed the consideration upon which the right to enforce the guaranty depended.

The services, up to that time, had been performed by the plain-tiff, and, by the contract of guarantee, were thereafter to be per-formed by him. The employment was of the plaintiff alone. The contract of guaranty was with the plaintiff alone. Chitten-den was no party to either, and sustained no relation of privity either to the defendant, or his brother Daniel B. Mr. Roberts rendered personally the services contracted for, and contemplated by the guaranty, in fulfilment of it on his part. This being so, it is difficult to see upon what ground, either of law or morals, the fact that, by an arrangement between the plaintiff and Mr. Chittenden, the latter was to share with him a part of the pay for such service, can be held to operate as a discharge to the defendant of the liability which the guaranty would have

imposed on him, in case such partnership had not been formed.

The count is special on the guaranty, and under this the plaintiff is entitled to recover, if at all. Roberts & Chittenden, as partners, could not recover on it in a joint action, however it might be if they had brought a suit directly on their charges, either in book account or general assumpsit. See *Maynard et al.* v. *Briggs*, 26 Vt. 94, and cases there cited.

The point made as to charges for disbursements by the plaintiff, is sufficiently answered, by the statement in the report, that " the charges of the plaintiff are for services actually rendered and disbursements made in said suit, and in amount are reasonable and proper, and no objection is made to them by the defendant in that respect. But it is claimed &ast; &ast; &ast; that he is under no liability to the plaintiff to pay any part of his said account." In the closing part of the report, in the summary of grounds and points taken by the defendant, it appears that no such point was made before the referee. Hence no facts are reported having reference to that class of items, beyond the fact that the disbursements were made by the plaintiff, as attorney and counsellor in defence of the suit of Sheldon against said Daniel B.

We think it is too late to start the point for the first time in this court, upon the case as it comes before us. Yet we are all agreed that, in this state, the payment of such fees is an incident of the services to be rendered by an attorney in the position occupied by Mr. Roberts in that suit, and fairly comes within the scope of the guaranty.

The judgment of the county court is reversed, and judgment rendered for the plaintiff for the sum reported by the referee.