[No. 2427.]

## KEPHART V. BUDDECKE ET AL.

**1. Contracts—Bonds—Bank Deposits.**

A bond given by a bank and sureties to the state treasurer, recited that heretofore it had been customary to deposit the moneys of the state in the name of the treasurer with divers banks and banking institutions of the state, that large sums had been so deposited, and that the treasurer would deposit certain moneys of the state with the bank executing the bond, conditioned that the bank should keep "all said sums so deposited, or to be deposited, as aforesaid," subject to the order and check of the treasurer, and pay over the same on demand. Held, that the recital of deposits previously made in "divers banks" construed with the condition to keep "all said sums so deposited," implied that a deposit had been made in obligor bank, and the sureties on the bond were liable for the safe keeping and payment of money deposited prior to the execution of the bond as well as afterwards.

**2. Same—Consideration.**

An agreement of the state treasurer to make future deposits in a bank, was a sufficient consideration to support a bond by the bank and sureties to safely keep and pay over on demand money already on deposit with the bank and to be deposited in future.

*Error to the District Court of Montrose County. .*

*On Rehearing.*

Mr. CHARLES J. HUGHES, JR., Mr. F. D. CATLIN and Mr. JOHN C. BELL, for plaintiff in error.

Messrs. STORY & STORY, for defendants in error.

THOMSON, P. J.

This suit was brought by the plaintiff in error upon the following bond executed by the defendants in error as sureties:

"Know all men by these presents, that we, Bank of Montrose, as principal, and J. E. McClure, F. H. Reinhold, Fred G. Farner, N. G. Clark, R. C. Diehl, J. M. Cunningham, J. W. Owens, A. E. Buddecke,

James A. Fenlon, W. T. Ryman and George R. Hurlbut, as sureties, are held and firmly bound unto George W. Kephart, treasurer of the state of Colorado, in the just and full sum of thirty thousand dollars, for the payment of which well and truly to be made, we hereby bind ourselves, our heirs, executors and administrators, jointly and severally, firmly and by these presents.

"Sealed with our seals and dated the eighteenth day of January, A. D. 1897.

"The condition of this obligation is such that:

"Whereas, There is no depository provided by the state for the use of the treasurer, who is, nevertheless, absolutely responsible for the safe keeping of its funds; and

"Whereas, It has been heretofore customary and expedient to deposit the moneys of the state in the name of the treasurer with divers banks and banking institutions of the state of Colorado, to be by them held subject to the order and demand of the treasurer, as the public welfare and requirements demand; and

"Whereas, Large sums of money have accumulated in the state treasury, which have been so deposited, and which may continue to so accumulate beyond the demands to be made thereon during the term of office of the said George W. Kephart, from which the people of the state are deriving no revenue or benefit, and which for safe keeping should be deposited in the name of the treasurer in divers banks aforesaid.

"Whereas, The said George W. Kephart, treasurer as aforesaid, has determined and will deposit certain of the moneys of the state of Colorado, for safe keeping, with and in The Bank of Montrose, the amount thereof shall be subject to withdrawal or diminution by the said George W. Kephart, as the requirements of his office shall demand, and which

amount may be increased or decreased as the said George W. Kephart may determine; and

"Whereas, The said bank, in consideration of the said deposits, has agreed to and will pay the said George W. Kephart, for the use and benefit of the state of Colorado, the sum of four per cent. per annum on account of said deposit, the same to be paid quarterly upon the daily average of the sum of such amount as the said bank shall have on deposit to the credit of said George W. Kephart, for the quarter or any fraction thereof next preceding the payment of said per centum, which shall be computed and credited to the account of said George W. Kephart, treasurer, as a part of the said state funds, and the said George W. Kephart to be at once notified of said credit and the amount thereof.

"Now, Therefore, if the said Bank of Montrose shall well and truly keep all said sums of money so deposited, or to be deposited, as aforesaid, subject to the check and order of the said George W. Kephart, treasurer as aforesaid, and shall pay over the same and each and every part thereof, to the said treasurer upon his written demand therefor, and shall estimate, calculate and pay said per centum as aforesaid, and shall, in the event said money or any part thereof remain in its custody after the expiration of the term of office of said George W. Kephart, pay over such sum or sums to his successor in office, as shall be by him demanded and shall in all respects save and keep him, the said George W. Kephart and his sureties to the state of Colorado, harmless and indemnified for and by reason of the making of said deposit or deposits, then this obligation to be void, and of no effect, otherwise to be and remain in full force and virtue."

The complaint set forth the bond in full; and after alleging that the plaintiff was the regularly

elected, qualified and acting state treasurer of the state of Colorado, from January 10, 1897, until January 10, 1899, proceeded as follows:

"That on, to wit, September 28, A. D. 1897, the plaintiff, as treasurer of the state of Colorado, as aforesaid, had moneys of the state of Colorado in his hands as such treasurer on deposit on demand in said Bank of Montrose, that is to say, the sum of fifteen thousand dollars ($15,000), so deposited as aforesaid, that is to say, which was on deposit in the said bank, on said January 18, A. D. 1897, as provided in said bond hereinbefore set forth, and said sum has ever since continued and remained on deposit therein, and that there was due as interest thereon, on, to wit, said twenty-eighth day of September, A. D. 1897, the sum of three hundred dollars ($300), due and payable from said Bank of Montrose to the plaintiff herein, as provided and set forth in and by the terms of said bond hereinbefore set forth.

"That upon, to wit, the twenty-eighth day of September, A. D. 1897, said Bank of Montrose became insolvent and closed its doors and refused to pay the depositors of said bank and this plaintiff as such treasurer or at all, any of said moneys so deposited with said bank, as hereinbefore alleged, and said Bank of Montrose did immediately thereafter make an assignment of its goods and credits, and all of its assets to its assignee, to wit, N. G. Clark, who was later succeeded as assignee by James F. Kyle, and was on said day, and then and there acknowledged itself to be insolvent and unable to pay said deposit and interest thereon to said plaintiff, and that the plaintiff as said depositor and as such treasurer of the state of Colorado, demanded in writing of the Bank of Montrose said sum of fifteen thousand three hundred dollars ($15,300) so due to him as aforesaid; and that by reason of the insolvency of said Bank of

Montrose, and of its failure to pay plaintiff or his successor in office, said money or any part thereof, so on deposit therein and due to him as aforesaid, or said interest thereon, and because of the inability of said bank to do so, there became due, and from thence hitherto has remained and is now due and owing from the defendants herein, as sureties on said bond, to the plaintiff, the sum of fifteen thousand three hundred dollars ($15,300) and interest thereon at the rate of six per cent. per annum, from September twenty-eighth, A. D. 1897, until the present time, less only a credit of the sum of three thousand four hundred and sixty-eight dollars and forty-three cents ($3,468.43), paid thereon as hereinafter stated, and the further sum of one thousand dollars ($1,000), paid thereon as hereinafter stated.''

A demurrer to the complaint for want of facts was sustained; and, the plaintiff declining to amend, judgment was entered accordingly. The plaintiff brings error.

The theory of the demurrer is that, on the face of the complaint, the money sued for was not the money the bond was given to secure. The position taken is that by the terms of the instrument the defendants assumed liability only for money which should be deposited in the bank after its execution; but that it nowhere appears in the complaint that this money was so deposited. The complaint does not give the date of the deposit. Indeed, we think a fair inference from its language in relation to the subject would be that the deposit was made before the bond was executed. The date of the bond was January 18, 1897; and the complaint shows that on that day the money was already in the bank. But whatever may be said respecting the validity of the inference, the allegation is, at least, entirely consistent with the supposition of a previous deposit; and, for the purposes

of this opinion, we shall regard it as equivalent to a direct averment of a deposit previously made. The question, then, is : What fund or funds was the bond given to secure? The answer to this question must be found in the recitals and conditions of the instrument. The intention of the parties is to be sought in the language they have employed; and to discover that intention the instrument must be considered as a whole. Effect must, if possible, be given to every clause and every word; and no word is to be regarded as superfluous, if a meaning which is reasonable and in harmony with the other parts of the contract, can be assigned to it.—17 Am. & Eng. Ency. of Law (2d ed.), 7; Lawson on Contracts, § 389; *People v. May,* 9 Colo. 80; *Vary v. Shea,* 36 Mich. 388; *Heywood v. Heywood,* 42 Me. 229; *Philadelphia v. River Front R. Co.,* 133 Pa. St. 134.

The word "so," and the words "as aforesaid," with which it is associated, were intended to render the meaning of the words "deposited," and "to be deposited," definite. The entire phrase, filled out and completed, would read "all said sums of money so deposited as aforesaid or all said sums of money so to be deposited as aforesaid." In point of time the first clause refers us to the past—the second to the future. The word "said," preceding the word "sums," and the words "so," and "as aforesaid," all point to something previously mentioned in the instrument. We have no authority to pronounce any of them meaningless, if, in the preceding language anything may be found which serves to fix its connection, or determine the office it was intended to perform. Respecting the words "so to be deposited as aforesaid," there is no difficulty. They are too obviously connected with, and, for their meaning, dependent upon, the recital, "Whereas, the said George W. Kephart, treasurer as aforesaid, has

determined and will deposit certain of the moneys of the state of Colorado, for safe keeping, with and in the Bank of Montrose,'' to require discussion, or even comment. The difficulty arises upon the words ''so deposited as aforesaid.'' Evidently those words were not intended to designate the same moneys with those yet to be deposited. Their form impresses them with a past signification, while the others carry a future meaning. We must, therefore, inquire what moneys are referred to as having been ''so deposited as aforesaid.''

The instrument begins with recitals that it had been customary to deposit the moneys of the state in the name of the treasurer with divers banks, to be by them held subject to the demand of the treasurer, and that large sums of money had been so deposited. The names of the banks are not given, but the facts of the deposits having been made, is distinctly stated. Now there is nothing in the instrument with which the condition for the payment to the plaintiff of all sums of money ''so deposited as aforesaid,'' can be connected, except those recitals of past deposits. Unless the condition is explained by those recitals, it has no meaning. And, on the other hand, the recitals are without meaning apart from that condition. Except as a preface to the condition, they are utterly useless for any purpose of the instrument. The condition for the payment to the plaintiff of moneys ''so to be deposited as aforesaid,'' is intimately connected with the recital of the plaintiff's agreement for future deposits; but to the recital of past deposits, it has no relation or relevancy. This recital mentions the deposits as having been made in divers banks; but because the Bank of Montrose is not named, it is argued that as the condition is for the payment by the Bank of Montrose of the moneys ''so deposited as aforesaid,'' and the recital refers to no deposit

in that bank, there is no relation or connection between the recital and the condition. But we think the necessary connection, while not appearing by explicit statement, is clearly inferable from the general tenor of the instrument. The obligors undertook, for the safe keeping, as well as the payment, by the Bank of Montrose, of certain deposits previously made. The undertaking was prefaced by a recital of deposits previously made in divers banks. The bank could not keep money which it did not have. The money which it was bound to keep must, therefore, have been deposited with it; and as the only recital of money deposited, and the only recital which gives the undertaking any intelligibility, refers to "divers banks," the implication that the Bank of Montrose was one of the "divers banks," assumes the character of certainty.

But we are now met by the contention that in so far as the sureties bound themselves for the payment of a debt then owing by the bank to the plaintiff, their undertaking was without consideration. A promise by one to pay a past indebtedness of another, cannot be enforced unless some new consideration moves to the promisor; but if the surety is a party with his principal to a contract executed in consideration of some benefit to accrue to the principal, he is bound by the contract. The consideration is sufficient as to him. If this bond had been given for the sole purpose of securing money which the bank owed the plaintiff at the time, then some other consideration than the past indebtedness of the bank must be shown. But we think it abundantly appears on the face of this instrument that there was such consideration. The bond is an entirety. It is a single contract. It does not contain independent agreements, each based on a distinct consideration, so that one might stand while the other might fall. All its recitals and

conditions contemplate the accumulation of a single fund composed of past and continued deposits. The bond was conditioned for the payment of this fund to the plaintiff, from time to time, on his check or order, as the requirements of his office might demand. The checks or orders were not to be drawn against old deposits or new deposits, but against a fund in which the identity of both was lost; and in consideration of the deposits to be made, the payment of all orders was guaranteed. The agreement of the plaintiff to make future deposits in the bank, constituted a new consideration, and was sufficient to support the contract as an entirety. It rendered the undertaking of the sureties for the payment of the deposits previously made, as well as those to be made, valid and binding.—*Loomis v. Newhall*, 15 Pick. 159; *Roberts v. Griswold*, 35 Vt. 496; *Irvin v. Locke*, 20 Colo. 149.

It was error to sustain the demurrer, and the judgment must be reversed.

*Reversed.*