# CHARLESTON.

### VICTOR F. COOPER *v.* G. M. CHAFFEE.
### AND
### R. S. BLAIR *v.* G. M. CHAFFEE.

### (Nos. 5324 and 5325)

Submitted October 27, 1925.    Decided November 10, 1925.

1.  GUARANTY—*Letter by Officer of Corporation Held to Make Him Guarantor of Payment of Attorney's Fees.*

    A case, where a letter written by the president of a corporation, in which he owns a large amount of stock, to an attorney representing it in a certain litigation, during the pendency thereof and before its conclusion, stating: "I can assure you that if you will arrange the bond required and will be a little patient with regard to the bill due you and Mr. Cooper for your services in this matter, you will be paid in full, if not by the company, it will be paid by the writer", when considered with all the other facts and circumstances, makes the writer of the letter a guarantor, and fixes his liability to pay both the attorney addressed in the letter and the one referred to therein, for past and future services in said litigation, if not paid by said corporation, both attorneys having been theretofore separately retained by said corporation to represent it in said litigation.    (p. 351.)

    (Guaranty, 28 C. J. § 201; 29 C. J. § 86.)

2.  SAME—*Attorneys Held Entitled to Sue Out Attachment and Prosecute Suit in Equity Against Non-Resident Guarantor of Payment of Fees.*

    In such case, the guarantor being a non-resident of the state, each attorney may sue out an attachment and prosecute a suit in equity, to recover the value of said services, by virtue of chapter one hundred and six, section one, of the Code.    (p. 355.)

    (Guaranty, 28 C. J. § 174.)

3.  SAME—*Rendering Further Legal Services Held Good Consideration for Promise to Pay for Services Rendered.*

    The rendering of future services is a good consideration to uphold the said promise to pay for services already rendered.    (p. 357.)

    (Guaranty, 28 C. J. § 50.)

4. SAME—*Notice of Acceptance of Guaranty Sufficiently Shown.*

   While, to bind said guarantor, it must appear that he was notified of the acceptance of the guaranty, and of the reliance upon it, this sufficiently appears where it is shown that he expected and understood that the person guaranteed would continue to render services after the guaranty according to its terms.   (p. 358.)

   (Guaranty, 28 C. J. § 25.)

5. FRAUDS, STATUTE OF—*Consideration for Promise to Pay Debt of Another Need Not be Expressed in Writing.*

   Under our statute, where one engages to pay the debt of another, in a writing signed by him, the consideration necessary to the validity of such promise, need not be expressed in the writing.   (p. 356.)

   (Frauds, Statute of, 27 C. J. § 345.)

   (NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Wirt County.

Separate suits by Victor F. Cooper and by R. S. Blair against G. M. Chaffee. Decree in each suit for plaintiffs, and defendant brings error. Cases considered together on appeal.

*Affirmed.*

*James L. Smith, Price, Smith & Spilman* and *J. M. Woods,* for plaintiff in error.

WOODS, JUDGE:

The above separate suits in chancery were instituted in the circuit court of Wirt county against the same defendant and are based upon practically the same facts. Both suits grew out of the same transaction, were instituted and prosecuted at the same time and in the same manner, and the questions involved on appeal are the same. For this reason we will consider them together.

The plaintiffs filed their affidavits for an attachment against the property of the defendant on the 4th day of August, 1923. The affidavits state that the defendant is indebted to each of the plaintiffs, on open accounts, for professional ser-

vices rendered to the Dorothy Oil Company, a foreign corporation, at that company's special instance and request, in the case of G. W. Nutter against the Dorothy Oil Company lately pending in the circuit court of Ritchie county, and the Supreme Court of Appeals of West Virginia, and that the defendant has made a promise in writing to pay each of the plaintiffs the amount of said accounts. The affidavits further state that the defendant is a non-resident of the State of West Virginia. On the 6th day of August, 1923, attachments were issued by the clerk of the circuit court of Wirt county based on said affidavits and levied upon 130 acres of land owned by the defendant in Wirt county, and on the same day the plaintiffs brought these suits in said court to enforce the liens of their attachments so levied.

It appears from the records in these suits that in September, 1922, the plaintiffs were employed by the Dorothy Oil Company to defend it in a case pending in the circuit court of Ritchie county, West Virginia, wherein G. W. Nutter was plaintiff and the Dorothy Oil Company was defendant; that the negotiations for the services of these plaintiffs were made by the defendant as president of the Dorothy Oil Company; that Cooper and Blair practiced law independently of each other and were acting in the last mentioned case only by virtue of an independent employment by the corporation; that the outcome of said case in October, 1922, was unfavorable to the defendant, Dorothy Oil Company, in the circuit court of Ritchie county, and a petition for a writ of error was filed in the Supreme Court of Appeals, and by it refused shortly after.

At the conclusion of the trial of the Nutter case in the circuit court of Ritchie county, and before a writ of error was applied for to the Supreme Court of Appeals, the present plaintiff Blair became concerned as to the payment of his fees for services rendered in the Nutter case and wrote to one Williams, superintendent of the Dorothy Oil Company, expressing some concern about the payment of the charges made by himself and the plaintiff Cooper to that date. The letter was forwarded by Williams to the defendant in these suits, G. M. Chaffee, who replied thereto under date of Janu-

ary 12, 1923, setting forth the financial condition of the Dorothy Oil Company, as follows:

"'Mr. Williams has forwarded to me your letter of January 6th and I feel that an explanation is certainly due you as to our neglect with regard to our appeal in the Nutter case, and I trust that the following explanation will not only be clear to you, but will make you realize to some extent the great difficulty with which the writer has been contending.

"The writer in his position as secretary and of Sherman & Sons Co., not only has very heavy responsibilities but is also about as busy as one man can possibly be.

"In addition to this and other matters in which he is interested, he has been for several months past thrashing out a very serious situation in the personnel of the Dorothy Oil Company. It is at a comparatively recent date that our useless dead wood has been eliminated, and I have been working with several parties with all my spare time toward a reorganization and a revamping of the company.

"This has taken a great deal of time and has kept me so much employed that we have temporarily discontinued the sale of our stock, and we are for the moment not in a position to take care of our obligations as I would like to see them taken care of. I have the assurance however that matters will soon clearify and when our re-organization meeting is held sometime within the next few weeks, the company will not only be in a better financial condition but also in much stronger position as regards the personnel working force. So far all this work has devolved upon the writer who has been obliged from time to time to advance money to the Company from his personal funds until they now owe him something like $35,000 which has been loaned without security of any kind.

"*I can assure you that if you will arrange for the bond required and will be a little patient with regard to our bill due you and Mr. Cooper for your services in this matter you will be paid in full,*

*if not by the Company, it will be paid by the writer.*

"I cannot with the pressure made upon my time just now write you any different answer. Your account however is before me and as soon as our Treasurer begins to issue checks against our account yours will be one of the first items to receive attention.

"I trust that you will understand that I am not trying to evade any responsibility nor asking you to pass on an item that is not 100 per cent. This letter is written in order that you may understand to some small degree the circumstances and not feel that I have been intentionally neglectful.

"I trust that our demurrer will be sustained when argued, and beg to remain."

The defendant, Chaffee, was the president of said company at the time the foregoing letter was written and had occupied such position during the period of the said employment of the plaintiff attorneys. As shown in the letter, he was a heavy creditor of the said company. This fact accounts for his effort to reorganize it, place it on a better financial basis, and likewise reveals a reason for a personal interest in seeing the Nutter case pushed to a successful conclusion in the Supreme Court of Appeals.

The plaintiffs' separate suits are predicated upon the theory that the foregoing letter is a separate guaranty to each of the plaintiffs made by the defendant personally to pay not only the amount of fees due at that time, which was before the prosecution of the appeal in the Nutter case, but those to accrue subsequently in the prosecution of the writ of error. Plaintiffs also rely upon a letter addressed to the plaintiff Blair, which was written after all the work had been done in connection with the prosecution of the Nutter case in the Supreme Court of Appeals and the writ of error refused, bearing date the 23rd day of March, 1923, signed by the defendant, Chaffee, in which he says:

"In any event I want to assure you your bill will be paid and I will pay you myself if necessary."

On the 6th day of October, 1924, these causes came on to be heard and the circuit court found that the defendant, Chaffee, was indebted to each of the plaintiffs to the amount of his claim. The court further found that the real estate levied upon in the attachment proceedings was subject to the satisfaction of said amounts so found to be due and owing from the defendant, Chaffee, to each of the plaintiffs, and decreed a sale thereof, appointing a special commissioner for the purpose of making said sale.

Counsel for defendant in an able brief raises the following questions: (1) whether separate suits can be maintained; (2) the promise was not an absolute but a conditional guaranty and was never accepted by the plaintiffs; (3) there was no consideration to support the promise; and (4) the promise if valid did not bind defendant for plaintiffs' fees for future services. These questions will be considered in the order named.

Will separate suits lie? It appears from the correspondence between Blair and Chaffee, that Blair was retained to assist George Harris, in the Nutter case. Blair was paid a retainer by the company. On the approach of the time for the trial it was ascertained that Harris could not be present on account of ill health. Cooper was then employed by the Dorothy Oil Company, to assist in the litigation, at the suggestion of Riddle, a superintendent of the said company, and was paid a retainer fee by the company. These facts show an independent employment of each of the plaintiffs by the corporation. Hence while the promise relied on is in the same writing, it is a separate obligation. But, the defendant maintains, the letter is addressed to Blair and the promise therefore made to him and not being made directly to Cooper, and not for his sole benefit, he could not maintain a separate action at law thereon under the provisions of sec. 2, chap. 71, Code. We do not see the application here. Blair being a party to the agreement, he should sue at law, except by reason of chap. 106, sec. 1, Code, permitting him to sue in equity. If Cooper is not a party to the promise, as the defendant claims, then he could not sue at law, and he is entitled to sue in equity. Both suits are instituted by virtue

of the latter statute, in equity. Whenever a plaintiff has a cause of action upon which he can maintain a suit in form ex contractu he may, if he have grounds therefor, sue out an attachment and prosecute a suit in equity. *Piedmont Grocery Co.* v. *Hawkins,* 83 W. Va. 180; *Bowlby* v. *DeWitt,* 47 W. Va. 323; *DeCamp* v. *Carnahan,* 26 W. Va. 839. The ground in each of the instant suits was that the defendant was a non-resident of the state. However, as Judge LYNCH observed in *Mabie* v. *Moore,* 75 W. Va. 761: "It will be observed, equity assumed jurisdiction for the enforcement of contractual liabilities against non-resident debtors by attachment long before that remedy was available in actions at law."

Again it is urged that the promise was not an absolute guaranty, but was, in legal effect, a contingent or conditional offer of guaranty, which was never accepted by the plaintiffs, and not being performed the plaintiffs are not entitled to recover. The condition stressed by defendant is that the bond mentioned was not in fact given. It is not plain what bond was referred to. If it was a suspending bond to be given before the circuit court of Ritchie county, this did not seem to have been required, hence the failure to give the bond in no wise prejudiced the defendant or his company. If the bond meant was a bond required by the appellate court on appeal, the refusal of the appeal dispensed with the necessity of such bond. As to the other condition "that they be a little patient" in regard to their bills, it appears that the defendant was indulged for several months by the plaintiffs after the corporation, of which he was the guiding head, had gone into voluntary bankruptcy, before they resorted to suits to recover their debts. Was there an acceptance? Of course, to bind a guarantor, it must appear that he was notified of the acceptance of the guaranty, and of the reliance upon it, but this sufficiently appears where it is shown that he expected and understood that the party guaranteed would continue to render services after the guaranty according to its terms. *Roberts* v. *Griswold,* 35 Vt. 496. The record here shows that Chaffee was advised of every step taken by the plaintiffs in the litigation after the date of the promise. The

plaintiffs continued to serve Chaffee upon the faith that he would pay agreeably to the promise in the letter. So far, then, the matter rested in the understanding and expectation of the parties, and there was an entire concurrence between them.

But, counsel for defendant further says that the promise was without a valuable consideration to support it. The consideration need not be expressed in the writing, where the statute merely requires the promise to be in writing. 20 Cyc. 265. In Virginia and West Virginia the statute expressly dispenses with the necessity of stating the consideration in the writing. *Donahue* v. *Rafferty*, 82 W. Va. 535; *Catlett* v. *Bloyd*, 83 W. Va. 776; *Colgin* v. *Henley*, 6 Leigh 85, The consideration may mean a benefit accruing to the third person, as where the promisor agreed that if plaintiff would renew a note for a third person then held by him, the promisor would guarantee payment of it. *Sloan* v. *Wilson*, 4 Harris & Johnson, (Md.) 322, 7 Am. Dec. 672. And again, where there was a written promise to become responsible for the rent if the promisee would let certain premises to a third person. *Waterbury* v. *Graham*, 4 Sandf. 215. Again, it is a sufficient consideration if it affect the interest of the person to whom the promise is made. *Colgin* v. *Henley, supra*. So also the rendering of future services may be a good consideration to uphold a promise to pay for services already rendered. *Roberts* v. *Griswold, supra*. The rule is clearly stated in the opinion in the *Colgin* v. *Henley* case: "As to the consideration, it is perfectly clear that it need not have *any relation to the interest of the party making the: promise;* it is sufficient if it *affect the interest of the person to whom it is made.* Loss or disadvantage to the person to whom the promise is made, is as good a consideration, as benefit or advantage to the person making it. Thus a forbearance to sue, or the surceasing of an action, is a good consideration, although it may operate exclusively for the benefit of the original debtor." What was the situation here at the time of Chaffee's promise? The corporation was in dire financial straits. The result of the judgment against it in the Nutter case might cause its creditors to push for payment

of their claims. To counteract the effect of this judgment an appeal must be sought and a reversal thereof obtained. To secure this result the attorneys representing the corporation must be induced to go forward, and the case made ready, and an appeal secured. Surely the welfare of the corporation demanded that this action be taken. Thus a benefit to the third person is shown. But the promise in this case may be said to be to pay the debt of the promisor, as well as that of another. Chaffee owned the principal part of the stock of the corporation. The failure of the corporation meant personal loss to him. For this reason, he, of all persons interested in the corporation, feared the disastrous effect that the result of the Nutter suit might have on the affairs of the corporation. His letter to Blair, containing the promise of payment, plainly shows this. While ostensibly speaking for the corporation, it was in fact a personal appeal of a man facing financial ruin. It certainly caused the attorneys on the faith of the personal promise to perform the services requested. So, whether we consider as a consideration, the benefit to be derived by the third party, or the benefit to the promisor, or the loss or disadvantage to the party to whom the promise was made, each is proven in this case.

The final point made by counsel for defendant is that the promise, if made, only had reference to bills for services then due, and could not bind defendant to pay for future services. The terms of the letter of guaranty expressly show that it was in the contemplation of the defendant that the plaintiffs were to continue to render services in the suit. What is meant by the expression "your services in the matter will be paid in full", if it did not refer to services already rendered and to be rendered in arranging for an ap-appeal of the case? It was the future work that Blair referred to in his letter (the matter of payment for past services being only an incident), and it was the future work to be done that was uppermost in the mind of the defendant at the time he wrote the letter. His plain intention was to employ language to assure the plaintiffs that he would pay them, if the corporation failed to do so, for work already done, and for future services "in full". If there be any

doubt that this is a proper construction to place upon the words of the promisor, it is removed by the construction placed upon them himself in his letter after the work was done, in which he said: "In any event I want to assure you your bill will be paid and I will pay you myself if necessary". This letter may properly be considered for the purpose of showing the construction given by the defendant to the promise relied on here. Considered in connection with all the circumstances of the case, the words of the promisor can not be open to any other interpretation. These plaintiffs evidently so understood them. In addition to giving the best of their professional services, their accounts in this case show that expenses of carrying the record before the appellate court in a distant part of the state were borne by them out of their own funds. Not only the letter of the bond, but equity and good conscience all unite in demanding that they be paid, by the defendant, for their services.

Being of opinion that there is no error, in either of the decrees entered in the court below, we affirm them.

*Affirmed.*