OF THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA

CHARLESTON.

ELKINS NATIONAL BANK *v.* SIMMONS *et al.*

MOORE *v.* SIMMONS *et al.*

HANSFORD, *Trustee, v.* SIMMONS *et al.*

Submitted January 12, 1905.  Decided January 24, 1905.

1. ATTACHMENT—*Decree—Creditor—Limitation.*

Under sub-section 8 of section 1 of chapter 135 of the Code, 1899, a decree overruling a motion to quash an attachment is an interlocutory but appealable decree, and does not preclude a renewal of the motion at the same or any subsequent term before final decree, and in a suit in which an attachment is sued out and some of the defendants appear and move to quash the attachment, and their motion is overruled, a creditor who files a petition under section 23, chapter 106, of the Code, disputing the validity of the plaintiff's attachment, and stating a claim to or interest in the property attached, and is made a formal party thereto, has the right to move to quash said attachment, and the statute of limitations as to his right to appeal begins to run at the date of the decree overruling his motion.  (p. 4.)

2. AFFIDAVIT FOR ATTACHMENT—*Sufficient Under Statute.*

An affidavit for an attachment, after stating the material facts relied upon, states, "and therefore the affiant says they fraudulently contracted the debt and incurred the liability for which the said suit is about to be brought." *Held,* to be a sufficient statement of the ground for an attachment under sub-section 8 of section 1, chapter 106, Code 1899.  (p. 6.)

3. ATTACHMENT—*Affidavit.*

   Where an affidavit for an attachment, after stating the material facts relied upon, and after stating the liability of the defendants, states: "Affiant says that the said J. H. and Chas. Simmons fraudulently incurred the liability aforesaid, for which suit is about to be brought," this is a sufficient statement of the ground for the attachment under sub-section 8, section 1, chapter 106, Code 1899. (p. 6.)

4. ATTACHMENT—*Material Facts—Affidavit.*

   Where the ground for an attachment is that the defendants fraudulently contracted the debt or incurred the liability for which the suit is about to be or is brought, the affiant should state the material facts relied upon to show the existence of such ground, and if the facts are stated in a vague and uncertain manner, and not sufficient to show that the debt was fraudulently contracted, or the liability fraudulently incurred, the attachment should be quashed. (p. 6.)

Appeal from Circuit Court, Randolph County.

Action by the Elkins National Bank against Jesse H. Simmons and others, and by B. W. Moore against J. H. Simmons and others, and by Lloyd Hansford, trustee, against Jesse H. Simmons and others. Decree for plaintiffs and W. E. Hedrick and other defendants appeal.

*Reversed.*

HARDING & HARDING and J. L. WAMSLEY, for appellants.

L. D. & J. F. STRADER, C. W. DAILEY and E. D. TALBOTT, for appellees.

SANDERS, JUDGE:

The first two of these causes were instituted in the circuit court of Randolph county, that of the Bank against Simmons and others being first instituted, and attachments were sued out in each of them and levied upon the real estate of the defendants, J. H. and Chas. Simmons, situated in Tucker and Pendleton counties. A short time thereafter the defendants, J. H. and Chas. Simmons, by deed of trust conveyed to plaintiff in the last named case, L. Hansford, trustee, all their property, including that which had been levied upon as aforesaid, to secure all their indebtedness to their creditors ratably. After the execution of said trust deed, Hansford, trustee, instituted a chancery suit in the circuit court of Tucker county, against J. H. Simmons and others, for the

purpose of settling up the estate of J. H. and Chas. Simmons, which suit was, by an order entered on the 12th day of March, 1900, removed to the circuit court of Randolph county, and by a decree in the circuit court of the last named county, on the 16th day of May, 1900, these three causes were consolidated and ordered to be heard together. And on the 16th day of May, 1900, E. A. Cunningham, counsel for Timothy Simmons and certain other creditors of J. H, and Chas. Simmons, other than the appellants, appeared and moved to quash said attachments, which motion was, by the court, overruled; and on the 21st day of May, 1900, and again on the 16th day of October, 1900, J. H. and Chas. Simmons appeared and moved to quash each of said attachments, which motions were likewise overruled.

There is nothing in the record to show just when L. Hansford, trustee, moved to quash said attachments, except in the decree entered on January 27, 1903, it appears that the joint motion to quash of L. Hansford, trustee, and others, had been filed, but when filed the record does not state; but this is immaterial, for the decree of January 27th does show that the motion was made and on that date overruled.

The appellants, W. E. Hedrick and E. D. Wamsley, filed their petitions in the two first mentioned causes, disputing the validity of said attachments, and were made formal parties to these proceedings, the petition of Hedrick being filed on the 16th day of October, 1900, and that of Wamsley at the January term of said court, 1901. After petitioners were made formal parties to these suits, they each moved to quash said attachments, which motions were, by decree entered on the 27th day of January, 1903, overruled, and on the 21st day of January, 1904, the appellants, Hedrick, Wamsley and Hansford, trustee, presented their petition for an appeal from the decree overruling their motions to quash said attachments, which was allowed.

There are only two questions presented by the record. One is, was the right of appeal barred by the statute of limitations at the time the appellants presented their petition therefor, and the other is, if the appeal was not barred, did the court err in overruling the motions to quash said attachments.

The appellants contend that at the time the petition was

presented for the appeal, that more than two years had elapsed since the motions to quash said attachments were made and overruled. It is true the record shows that the petition was presented for an appeal on the 21st day of January, 1904, and that more than two years had expired since each of said motions to quash was overruled.

When the motions to quash on the 16th and 21st days of May, 1900, were made, neither Hedrick nor Wamsley were parties to these suits—Hedrick not becoming a party until the 16th day of October, 1900, and Wamsley not becoming a party until the January term of court, 1901. It is insisted that the order entered overruling the motions to quash the attachment was an appealable decree, and that the appellants became parties before the right to appeal therefrom was barred. Sub-section 8 of section 1, chapter 135 of the Code, provides that a party to a controversy in any circuit court may obtain an appeal in any case where there is a judgment or order quashing or abating or refusing to quash or abate an attachment, and of course under this provision of the statute the orders entered overruling the motions to quash were appealable, but certainly not by parties who at that time were not parties to the suit, but only those persons could appeal from such order whose motions had been passed upon adversely to them. It certainly does not require argument nor citation of authorities to show that appellants could not have appealed from these orders, which were entered before they became in any way identified with the suits, and not being entitled to appeal from the orders entered before they became parties, it is difficult to understand how their rights could be in any way affected by such orders. It is said they became parties before the appeal was barred. What if they did? This would give them no right to appeal from the decree of the court refusing to quash an attachment upon the motion of some other defendant. The appellants could not be heard to complain in this Court that the circuit court had refused to quash the attachments when they had not asked this to be done. They must first make such motion, and it must be passed upon adversely to them. The statute allows an appeal from an order quashing or abating or refusing to quash or abate an attachment. This applies to the parties directly interested in the motion; not to some

one who may be a party to the suit and have an interest in its ultimate result and does not make such motion, or join therein. The appellants clearly had no right to appeal from either of the orders refusing to quash the attachments upon the motion of the other defendants. If they had done so they would have been met, and properly so, in this Court, with a motion to dismiss their appeal on the ground that the lower court had made no adverse ruling to them.

But appellees say that the orders entered overruling the motions to quash the attachments were final, and could not be set aside after the term of court at which they had been entered, and that if the appellants desired to be relieved against these orders, they should have filed their bill of review. This position is not sound, for an order overruling a motion to quash an attachment is interlocutory, and does not prevent a renewal of the motion, and the appellants, as soon as they became parties to the suits, moved to quash the attachments, which was not acted upon till the 27th day of January, 1903, and, therefore, they had no appealable interest in the case until that time, and the statute did not begin to run against them until that date. An order entered in a case overruling a motion to quash an attachment is like an order entered overruling a demurrer. There is no reason because a court enters an order at one term overruling a demurrer, that it cannot, at the next term, consider the demurrer and sustain it; and the same rule will apply to motions to quash attachments. Although an order refusing to quash an attachment is appealable, still it is not a final decree. The fact that the court refused at one term to quash the attachment is no reason why at a subsequent term it could not, upon the motion of the same person who had previously made it, or upon the motion of some other defendant, made at a subsequent time, quash the attachment. The very late case decided by this Court of *Simmons* v. *Simmons*, 48 S. E. Rep. 833, decided that an order overruling a motion to quash an attachment is interlocutory and does not preclude a renewal of the motion; and certainly a party who had never made such motion would have the right to do so at any time, before the final decree in the cause, and his right to appeal

would date from the time the court passed upon it.    Clearly this Court has jurisdiction to entertain the appeal.

The next question is, should the circuit court have quashed the attachments?   It is claimed that the affidavits are defective, because they fail to show what ground is relied upon. In the case of *Bank* v. *Simmons, et al.*, the affidavit, after stating the material facts relied upon, contains this language: "Affiant says that they fraudulently contracted the debt and incurred the liability for which the said suit is about to be brought;" and in *Moore* v. *Simmons, et al.*, after also stating the material facts, and after describing the liability, says: "Affiant says that the said J. H. and Chas. Simmons fraudulently incurred the liability aforesaid, for which suit is about to be brought."   The ground stated in the affidavits is as provided for in sub-section 8 of section 1 of chapter 106 of the Code, and comes clearly within its provisions.

Are the facts relied upon in these affidavits sufficient? The affidavit should, by some direct and positive averment, show a fraudulent act upon the part of the debtor in contracting the debt, and it must be such an act as to constitute and show a fraudulent intent.   Now, in the first above mentioned case, *Bank* v. *Simmons, et al.*, the affidavit does not show by that positive and clear language which is required that when J. H. Simmons presented the draft for $4,000 to Warfield, the cashier, and had it placed to his credit in the Elkins National Bank, that Kunkle Bros. were indebted to him, and it certainly does not show that he stated that they owed him enough to pay the draft.   The affidavit, in this respect, is vague and uncertain.   What did Simmons say?   The affidavit does not show.   His language ought to be given, so the court can see that he made such statements as amount to a fraudulent contraction of the debt, and not leave it to the affiant to form his conclusions as to what would amount to fraud. Then, again, there is a statement in the affidavit that the draft for $4,000 was sent to the Merchants National Bank of Baltimore, Md., for collection, and the said draft was promptly presented to the said Kunkle Bros. for payment, but the same was dishonored and protested, and payment thereof refused, upon the ground of no funds or not sufficient funds for the purpose.   Now, it is certainly material, even if Simmons had stated to Warfield that Kunkle Bros. owed him

a sum sufficient to ·pay the· draft, to negative the· fact that he did owe him. Simply an allegation in the affidavit to the effect that .the draft was presented to Kunkle Bros. for payment, and that it was·dishonored and protested, and payment thereof refused, for the reasons above given, does not say that Kunkle Bros. did· not owe Simmons that amount of money. It simply says that Kunkle· Bros. refused to pay it, and gives their reasons for refusing to pay it, but does not, in positive and direct language, state that Kunkle Bros. did not owe it. The refusal to pay for certain reasons is simply the statement of Kunkle Bros. They may have owed the debt or they may not have owed it, but it is certain that the affiant does not state that they did, and so far as affiant is concerned, the statement that he made in the affidavit as to him can be perfectly true, and yet still there may have been ample funds in the hands of Kunkle Bros. to pay the draft.

Now, as to the affidavit in the case of *Moore* v. *Simmons*, made by B. W. Moore. This affidavit is very much like the one just referred to. Its language is vague, uncertain and indefinite. There is no positive and direct statement of facts which shows that the debtor fraudulently contracted the debt. The substance of it is that Moore sold to J. H. Simmons twenty-eight head of cattle and three hundred and fifteen head of sheep, at a given price. These cattle and sheep were to be weighed and received by J. H. and Chas. Simmons, and paid for where plaintiff resides, at such time as Simmonses should indicate in the month of October, 1899. That in October, 1899, the twenty-eight head of cattle were delivered to Simmons at the price agreed upon, and part of which had· already been paid, ·and without receiving the residue of the money the affiant, as directed by Simmonses, drove the cattle to the pasture of E. Hutton, and left them there for the purchaser. That on another date in October, 1899, Simmons directed the three hundred and fifteen head of sheep to be sent to Huttonsville, and they were sent to Simmons at that place, from where they were the next morning shipped to Baltimore, Md. And not receiving the pay for either the cattle or sheep, as affiant says ˙ Simmonses had promised him, he went to Huttonsville, and Simmonses gave him a check for $1,000. This check was drawn on the

Elkins National Bank, and was deposited by the payee in the First National Bank of Grafton; that it was presented for payment and payment thereof refused, and the check was protested, for the reason no funds in said bank.

In the first place, the contract had already been made between the parties, price agreed upon and stock weighed and delivered, and the sale actually consummated, before the check was given. Even if there were no funds in the bank to meet the check, that could not be urged as a reason to show the fraudulent contraction of the debt. And not only that, but this affidavit, in one respect, is subject to the same objection as the one above considered. That is, there is no statement of fact showing that Simmons did not have the money in the bank to meet the payment of this check.

And, again, these affidavits not only fail to show that Simmons did not have the money in the hands of Kunkle Bros. and the Bank to meet the draft and check, but there is nothing in them to show that even if Simmons made the statements that he had the money there, that he did so knowing his statements to be false, in fact, knowing that he did not have it. And neither do the affidavits show that the credit was extended to him believing in the truthfulness of his statements and relying thereon, and not knowing his statements were false. The facts stated in the affidavits should be fraudulent in fact, and if Simmons made the statements that he had the funds to meet these debts in the hands of Kunkle Bros. and the Bank, yet, unless he made the statements falsely, knowing that he did not have the money there, then there is no actual fraud; and his statements must have been accepted as true and relied upon and confided in by the persons who extended the credit.

But inasmuch as counsel for appellees, in their brief, contend that they should be given a day under section 1 of chapter 106 of the code, to file a supplemental affidavit, we therefore reverse the judgment of the circuit court, refusing to quash said attachments, and remand these causes with directions to the circuit court to quash the same, but with leave to the appellees, if they so desire, to file a supplemental affidavit, as provided by section 1 of chapter 106 of the Code.

*Reversed.*