# CHARLESTON.

ALONZO M. SNYDER *v.* J. J. BREITINGER *et als.*

(No. 5416.)

Submitted October 6, 1925.   Decided October 13, 1925.

ATTACHMENT—*Only Where Plaintiff's Claim is Absolutely Legal, and Jurisdiction Depends Solely on Validity of Attachment, or When Claim is for Debt Not Due, is Dismissed of Bill Necessary on Quashing Attachment; on Suit for Equitable Accounting, With Prayer for Discovery Necessary to Aid Accounting, Plaintiff Has Right to Have Case Retained on Docket After Quashing Attachment for New Process and New Order of Attachment.*

It is only when a plaintiff's claim is purely legal, and jurisdiction depends solely on the validity of the attachment, or when the claim is for a debt not due, that the jurisdiction

in equity fails, upon the quashing of the attachment, and calls for a dismissal of the bill. It is otherwise, where plaintiff's suit is for an equitable accounting by defendants with a prayer for a discovery necessary to said accounting. In the latter case the plaintiff has a right to have the case retained on the docket for new process and new order of attachment, if so desired.

(Attachment, 6 C. J. §§ 1059, 1085, 1086.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Ohio County.

Suit by Alonzo M. Snyder against J. J. Breitinger, and others. From two decrees, quashing three separate attachments, plaintiff appeals. .

*Reversed and remanded.*

*Erskine, Palmer & Curl,* for appellant.

*R. M. Morgan,* and *A. W. Laas,* for appellees Curn, Greif and Breitinger.

*Wright Hugus,* for appellee La Belle Iron Works.

WOODS, JUDGE:

This is an appeal from two decrees of the circuit court quashing three separate attachments. The bill and amended bill filed in this cause were for a discovery and an accounting to determine plaintiff's share in profits derived from the sale of certain coal lands situate in Ohio.

According to the pleading, plaintiff, Forsythe and two of the defendants, Breitinger and Greif, entered into a contract whereby plaintiff and Forsythe were to obtain coal lands, and defendants, both real estate brokers, were to sell same—the profits to be shared equally between the four. The plaintiff and Forsythe placed 5,000 acres, with maps, in the hands of defendants. Later defendants hired Curn to extend their coal holdings to 10,000 acres. LaBelle Iron Works, a West Virginia corporation, obtained an option on 5,000 acres (said acreage to be selected by it from any portion of the 10,000 acres), and later bought same at $65.00 per acre. The gross profits of this sale amounted to $125,000. This was kept for

a time from the knowledge of plaintiff and Forsythe. When plaintiff and Forsythe did discover that the sale had been made, the other parties repudiated and denied the interest of plaintiff and Forsythe in the profits of the sale, and did all in their power to hinder, delay and prevent the plaintiff and Forsythe from learning the facts pertaining to the sale, and from getting any share of the proceeds. A large portion, if not all, of said money and profits had been deposited with the Dollar Savings & Trust Company of Wheeling. Not only had the non-resident defendants sold options to the amount here claimed, but they had sold other options, of the exact amount of which plaintiff had no information, and which they refused to disclose and account for. Breitinger, Greif and Curn were preparing to remove from the State all the profits derived from all the said sales, so that it was a fraud upon the right of the plaintiff and intended to defeat him from sharing in the profits of said sales. The plaintiff therefore prayed that Breitinger, Greif and Curn be required to make full discovery of said sales of options and that an accounting be had and that they be required to pay plaintiff and defendant Forsythe all money due them for their one-fourth share each of the profits derived from said sale of options.

The bill was filed at November Rules, 1921, and process of garnishment was issued against said LaBelle Iron Works and said Dollar Savings & Trust Company requiring them to hold in their hands any funds arising from said sale that would be payable to Breitinger, Greif and Curn. LaBelle Iron Works and Breitinger, Greif and Curn appeared specially by counsel and moved to quash the original attachment, pending which motion a second attachment was sued out by the plaintiff. On March 7, 1922, the circuit court entered an order quashing both affidavits and both orders of attachment thereunder were dismissed. On the 4th day of January, 1923, the third affidavit was filed by the agent of the plaintiff for attachment, upon which an order of attachment was issued returnable to the next term of the circuit court, to be held on the 8th day of January, 1923. On the last day mentioned the plaintiff tendered his amended and supplemental bill of complaint in this cause. This amended pleading among other

things averred that the LaBelle Iron Works and the Dollar
Savings & Trust Company, since the institution of this suit,
joined with Breitinger, Greif and Curn, in their conspiracy
to defraud the plaintiff and Forsythe, by changing and modi-
fying their agreement, as to permit payment for said options
in escrow to a bank in Ohio, instead of the Dollar Savings
& Trust Company, in Wheeling, with the express purpose of
delaying and defrauding the plaintiff in his effort to collect
the sum to which he was entitled to receive as his share of the
profits. Leave was asked to file the same and to have process
served on the parties heretofore not served and heretofore not
appearing. To this action the defendant, LaBelle Iron Works,
by counsel, objected, which matter was taken under advise-
ment by the court, and on the 26th day of October, 1923, an
order was entered by said court filing said amended and sup-
plemental bill, the defendant, LaBelle Iron Works, being
granted until the first day of January, 1924, to answer the
same. On motion of the plaintiff, it was ordered that process
issue against the non-appearing defendants, returnable to the
14th day of January, 1924, that being the first day of the next
regular term of circuit court. The defendants, Breitinger,
Greif and Curn appeared specially, by counsel, and LaBelle
Iron Works, by counsel, theretofore, on January 4, 1923, and
moved to quash said third attachment issued on that day,
which motion was sustained by the court on the 14th day of
February, 1925, and thereupon the defendant, LaBelle Iron
Works, moved the court to dismiss plaintiff's suit, to which
motion plaintiff objected, and moved the court to continue
the cause on the docket for the further issuance of process
against said defendants, and for the further issuance of orders
of attachments therein, the court stating in its order that,
"it appearing that plaintiff's suit is for an equitable account-
ing by defendants with prayer for a discovery necessary to
said accounting", overruled said motion to dismiss said suit
and continued the same on motion of the plaintiff for further
issuance of process therein.

The foregoing are the facts appearing on the face of the rec-
ord that comes to us. It is apparent, that the appeal from
the order quashing the first two attachments, was not taken

within the time prescribed by the statute, and is therefore dismissed as having been improvidently awarded. Code, Chap. 135, Sec. 3; *Elkins National Bank* v. *Simmons,* 57 W. Va. 1. This limits our review here to the decree of the court quashing the third attachment on February 14, 1925. Counsel for defendants made no exception to the sufficiency of the affidavit, upon which the third attachment rested, insisting only that there was no pending suit at the time of its issuance. This raises the sole question to be decided on this appeal. The case of *Miller* v. *Zeigler,* 44 W. Va. 484, is relied on by defendants to sustain their position. This, however, unlike the present cause, was a suit in equity on a claim not due. In *Danser* v. *Mallonee,* 77 W. Va. 26, in an action at law, the court announced the rule that, after a non-resident defendant appeared specially and successfully moved to quash an attachment, he is not entitled to have the cause dismissed from the docket, but that after such action the plaintiff has the right to retain the cause on the docket for a new process and a new order of attachment. Judge MILLER, speaking for the court, said: "This case is not like a suit in equity on a claim *not due* and when jurisdiction in equity depends *solely* upon the validity of the attachment. In such cases, according to our decisions, the suit falls with the attachment and the bill is properly dismissed. *Miller* v. *Zeigler, supra; Frye* v. *Miley,* 54 W. Va. 324." Code, Chap. 106, Sec. 1, provides that attachment may be sued out in a court of equity for a debt or claim, legal or equitable. This section, properly construed, confers upon courts of equity jurisdiction to entertain suits, to recover on causes of action *ex contractu. Piedmont Grocery Co.* v. *Hawkins,* 83 W. Va. 180; *Bowlby* v. *DeWitt,* 47 W. Va. 323; *DeCamp* v. *Carnahan,* 26 W. Va. 839. Judge RITZ, in *Piedmont Grocery case, supra,* said: "Whenever a plaintiff has a cause of action upon which he can maintain a suit in form *ex contractu,* he may, if he have grounds therefor, sue out an attachment and prosecute a suit in equity." Courts of equity under this chapter, however, have no jurisdiction as to causes of action *ex delicto. Swarthmore Lumber Co.* v. *Parks,* 72 W. Va. 625; *Mabie* v. *Moore,* 75 W. Va. 761. In discussing this section, Judge LYNCH, speaking for the Court

in *Mabie* v. *Moore, supra,* said: "It will be observed equity assumed jurisdiction for the enforcement of contractual liabilities against non-resident debtors by attachment long before that remedy was available in actions at law. * * * Section 1, read in its entirety, means only that an attachment may be sued out in equity where equity has jurisdiction, and at law where the law court has jurisdiction." In the instant cause, the plaintiff's claim while in the nature of a debt due on contract, is for an equitable accounting by the defendants with a prayer for a discovery necessary to said accounting, thereby involving equitable rights, which can only be determined in a court of chancery. The lower court recognized this fact and gave it as a reason for refusing to dismiss the amended and supplemental bill. As there was no other objection made to the attachment, than that there was no pending suit, we, perceiving no insufficiency or irregularity in its substance and issuance, are of opinion that the court erred in quashing it.

*Reversed and remanded.*