GILMER, J.
This case has been argued as if it were a suit for specific performance of a contract; but it was, in fact, a proceeding by foreign attachment, the object of which was to restrain the home defendants from paying away certain debts alleged to be due from them to the absent defendant. The preamble to the act authorizing this proceeding recites “that creditors have experienced great difficulty in the recovery of debts due from persons residing without the jurisdiction of the Commonwealth, but who have effects here sufficient to pay such debts.’’ It is an innovation on the common law, and should be carefully watched and strictlj' confined to the ground covered by the statute. (Carr, Judge, in Kelso v. Blackburn, 3 Leigh, 306.)
It is admitted, that the plaintiff, when he filed his original bill, had no right to recover anything of Hendree. He had sold to him the house and lot in controversy and put him in possession, but had not conveyed the title, and had no title in himself, legal or equitable; no legal title, because he had no deed, and no equitable title, because he had no right to demand a conveyance from a court of equity. When this ground was taken by Hendree, in his answer, the plaintiff amended his bill and made Cosby, his vendor, a defendant. He filed his answer, from which it appears that more than two-thirds of the purchase money remained due from the plaintiff to him. The plaintiff, in his amended bill, prays that the money of Hendree by a decree *of the court may be applied to the payment of the purchase money due from him to Cosby, and after crediting Hendree with that amount, that the balance of the purchase money due from Hendree to him may be paid. To entitle himself to such a decree, the plaintiff must shew that 'the contract between him and Hendree was such a debt as comes within the meaning of the statute.' It is not enough for him to shew that specific performance might have been enforced. The proceedings are essentially different. In suits for specific performance the courts have a wide discretion ; indeed, the courts always exercise a discretion in deciding them. On the other hand, (.as has been seen) in proceedings by foreign attachments, they are tied down to a strict and literal compliance with the statute. In a suit for specific performance the only parties would have been the plaintiff, Hendree and Cosby, and the decree, if favorable to the plaintiff, would simply have directed the purchase money to be paid and the title to be conveyed to Hendree; but here Hendree’s debtors are made defendants, and a decree is ■ sought to subject his money in their hands to the payment- of this purchase money, due from the plaintiff to Cosby — -a co-defendant of Hendree, with whom he had made no contract and to whom he owed nothing; and' thus Hen-dree’s money, by a decree of the court, which would, in my opinion, have -been most obviously erroneous, having paid a debt which the plaintiff himself should *667 have paid before he was entitled in this way to come into court — the plaintiff is to have the benefit of this payment, and by means of it to compel Hendree to pay him the balance of the purchase money. There is nothing in the record to show that Hen-dree, at the time when he made the contract, knew that the title was in Cosby. It is true, he states in his answer “that he believes and charges at the time of the contract the plaintiff did not have the title and did not for a long time after.” The respondent, of course, speaks in the present tense, and refers to the time of ^filing his answer, and not to the time of the contract, though that is incidentally referred to; but the very next sentence shews that even then he was wholly ignorant of the facts about the title. The counsel for the appellant relied mainly on the ground that time is not of the essence of a contract. This is a familiar principle, but I do not think it applies to this case. It is an obvious principle both of law and equity, that no one “can have a contract enforced in his favor unless he has performed it or is ready to perform it on his part; and it would apparently follow, from this principle, that if the seller of an estate has contracted to shew a title by a specified day, and has failed to do so, he cannot afterwards enforce his contract. This conclusion is accurate at law, but is modified in equity, and it is said to be a maxim of equity ‘that time is not the essence of a contract in that court.(Adams’ Equity, 224.) In this case, however, no time was fixed within which a title was to be made. Hendree sets up no such defences; no such ground is taken by the able judge who decided the case in the Circuit Court, and I do not suppose he decided it on any such ground. In England, the practice in suits for specific performance, where there is a dispute about the title, is to refer the question of title to a master, and although a suit of that kind may be maintained where the plaintiff had no title when his suit was commenced, if he gets a title in due time, he is required to do so before the report of a master against him. (Sugden on Vendors, p. 306, vol. 1.) But in this case the plaintiff not only had no title at the time when he was asking a decree against Hendree, but he has none to this day, so far as appears from the record. There is strong ground for believing that the property had greatly depreciated in value between the time of the sale and the time when Hendree answered, (see his letter in the record) ; and even if this had been a suit for specific performance, that would have been of itself a sufficient reason against giving the plaintiff relief, *under the circumstances of this case; for it cannot be said that Hendree was in default in not paying a vendor who had no shadow of title, and who was seeking to pay for the land with Hendree’s money. For these reasons, I think the decree manifestly right, and I am for affirming it.
CEOPTON, J., concurred with Gilmer, J.
THOMPSON, J.
I cannot concur with the majority of the court in affirming the decree of the court below. It seems to me, upon the pleadings and the proofs, the plaintiff was entitled to relief, and that the decree dismissing his bill was manifestly erroneous. The reasons assigned by the court in its decree appear to me inconclusive, and I have been unable to discover any other grounds upon which it can be sustained.
At law, time is always of the essence of the contract. In equity, never, unless made so by the express contract of the parties, or by implication arising from the nature of the property or the avowed objects of the seller or purchaser, or the conduct of the parties; and the question always is, on bills for specific performance, when time is not material, or of the essence of the contract, not whether the seller had a good and perfect title at the date of the contract, and could at that time have made a title, but whether, then or subsequently, at the date of the report of the master deducing the title, or the date of the decree, or by the final decree for specific execution, such title can be made to the purchaser?
In one case, Gregson v. Riddle, in 1784, Eord Thurlow is reported to have held that the parties could not, even by express contract, make time material or of the essence of the contract, but that opinion has not received the sanction of subsequent decisions. On the contrary, it has been condemned and overruled, and the doctrine placed upon more rational foundations, according to which, as I have before said, it is never material, or of the essence of the contract, in a court of equity, ^unless made so by the agreement of the parties, express or implied. Sandford v. Pitt, 2 P. W. 629; Seton v. Slade, 7 Vesey, Jr. 265; Winn v. Morgan, Idem, 202; Hepburn v. Auld, 5 Cra. 262; Hepburn v. Dunlap, 1 Wheat. 178; Roach v. Rutherford, 4 Dessaus. 136; 1 Sug. Vend. 345, 346; Seymour v. Delancy, 3 Cow. 446; Longworth v. Taylor, 14 Peters, 372.
There appears to me to be no foundation for the pretension, that by the terms of this contract, or the nature of the property, or the conduct and expectations of the parties, time was of its essence, or material; and as to the contract between Barksdale and Cosby, why assume, as did the court below, that it was such an one as could not be enforced? And of what importance is that circumstance, if properly assumed? Since it is apparent from the record that Hendree knew, when he purchased of Barks-dale, that Barksdale had bought of Cosby, and had not acquired the legal title, and when it is perfectly manifest, since Cosby has filed his answer to the amended bill, admitting the sale to the plaintiff, consenting to the execution of his contract, claiming a balance of purchase money, and offering to convey to Barksdale or his vendee upon payment of that balance, *668 that it was as completely in the power of the court to give Hendree a good title by its decree, as if Cosby had in fact conveyed to Barksdale. The judge who rendered the decree must have thought Barksdale might bring his suit against Hendree and Cosby, successively, for specific execution, or why the reservation of that right in his decree? and if such right existed, as no doubt it did, why dismiss this suit and turn the plaintiff around to bring precisely similar suits, and two instead of one, when that one, now brought, is all sufficient. Instead of dismissing the bill, there should have been a decree requiring Cosby to execute and file a deed to Barksdale, and Barksdale a deed to Hen-dree; and, thereupon, that unless Hendree paid to Cosby the balance due him and the residue of the purchase money remaining of the $2,500, and its interest, to the plaintiff, *'within a period to be prescribed in the decree, the land should be sold, and if it sold for less than the purchase money, a decree over against Hen-dree in favor of Barksdale for the defi-cienc3, and for such deficiency a decree against the home defendants alleged to owe or have effects of Hendree in their hands, if it should be made to appear by answer or proofs that the home defendants owed or had effects of the defendant Hendree (who was a non-resident at the commencement of this suit) in their hands.
Decree affirmed.