# CHARLESTON.

## SWARTHMORE LUMBER COMPANY *v.* PARKS.

Submitted September 11, 1912.  Decided June 17, 1913.

1. EQUITY—*Jurisdiction.*

    A court of equity will not take cognizance of a fraud, working injury as a mere tort.  (p. 628).

2. CONTRACTS—*Breach of Contract—Remedy in Equity.*

    For breaches of contract, cognizable at law, there is no jurisdiction in equity to give redress by way of compensation or damages, if the bill has no object or purpose other than recovery of such compensation or damages.  (p. 628).

3. EQUITY—*Jurisdiction—Actions Ex Delicto.*

    Chapter 106 of the Code, authorizing attachments in equity, confers upon courts of equity no jurisdiction as to causes of action *ex delicto*.  (p. 629).

4. CORPORATIONS—*Right of Action—Breach of Contract with Promoter.*

    A corporation does not succeed to the right of action of one of its promotors against his agent for breach of the contract of agency, antedating the existence of the corporation and complete in all respects before the date of its organization, in the absence of an express assignment thereof.  (p. 629).

    (LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Randolph County.

Bill by the Swarthmore Lumber Company against J. F. Parks.  From a decree of dismissal, plaintiff appeals.

*Affirmed.*

*Taylor & Allen* and *W. B. & E. L. Maxwell,* for appellant.

*Blue & Dayton,* and *Harding & Harding,* for appellee.

POFFENBARGER, PRESIDENT:

The bill in this cause, dismissal of which for want of equity is complained of, proceeds upon two theories of right of recovery, a contractual relation between the parties in connection with which the defendant perpetrated a fraud, and a fraud on his part independent of such relation, working injury to the plaintiff.  At the institution of the suit, an attachment, based

upon fraud in the incurrence of the alleged liability, was sued out.

The fraudulent act complained of in the bill and set up in the affidavit for the attachment was a misrepresentation on the part of the defendant, an estimator of timber, as to the quantity of timber on a large tract of land of which the plaintiff became the owner. He was employed to make the estimate before the purchase was made but not by the plaintiff. It is a corporation organized shortly after he made his report as to the quantinty of timber. J. G. Rouse, a promoter of the plaintiff corporation, procured the estimate to be made in the month of January, 1907. Having in view or contemplation the purchase of about 4,000 acres of timber land and a saw mill and other property from one J. Scott Bell, who represented the quantity of timber on the land to be more than 40 million feet, Rouse, through one Capt. W. H. Cobb, employed the defendant to go upon the land and estimate the timber. Parks began his estimation about January 1st and made his report on January 8, 1907, showing 39 million feet of spruce and hemlock, one million feet of bass wood and one million feet of other kinds of timber, making a total of 41 million. On the faith of this report and Bell's representation, Rouse, on the 12th day of January, 1907, entered into a contract with Bell for the purchase of the property at the price of $162,831.00. By this contract, Bell bound himself to execute a deed on February 1, 1907, or immediately thereafter, to Rouse, or some one designated by him. In pursuance thereof, the deed was executed on January 30, 1907, to Albert A. Blakeney, as agent for the Swarthmore Lumber Company, the plaintiff corporation, which had not yet been organized or chartered. Rouse represented some undisclosed associates. On the 29th day of January, 1907, the interested parties held a meeting and they decided definitely to organize a corporation to take over the property. Pursuant to this agreement, they entered into a formal one for incorporation, on the 20th day of February, 1907, and the certificate of incorporation issued by the Secretary of State bears date February 23, 1907. In the meantime, the contract with Bell was consummated in the following manner: Rouse had made a $5,000.00 cash payment, and on the 30th day of January, 1907, a deed in which Bell is described as the party of the

first part, Rouse as the party of the second part, and the Swarthmore Lumber Company as the party of the third part, was executed. It recited payment by Rouse of $5,000.00 and stipulated for an additional payment of $79,500.00 by the party of the third part on or before the delivery of the deed, as well as the execution of seven notes for $5,000.00 each and one for $4,165.50, all to bear date January 12, 1907. This deed was acknowledged Feb. 1, 1907, and, on the next day, delivered to the clerk of the county court of the county for record, all of which indicates payment of the purchase money of the property in the name of the Swarthmore Lumber Company before the date of its organization.

The allegations of the bill, sustained by proof, show that, after its organization, the plaintiff corporation took charge of the property, operated the mill for a time, cut and manufactured some of the timber, and ascertained the existence of a very large shortage in the estimated quantity, about 16 million feet, and the plaintiff claims to have been injured and damaged by the defendant's false representation as to the quantity of timber to the extent of $48,000.00, 16 million feet at the price of $3.00 per thousand. In September, 1908, it sued Bell in equity in the Common Pleas Court of Erie County, Pennsylvania, to enjoin the collection of a balance due on the purchase money notes, amounting to $39,166.50, and for such other relief as it was entitled to have upon the facts and circumstances stated in the bill. The injunction granted thereon was afterwards dissolved and the suit dismissed in consequence of a settlement of the matters in difference between the parties by an agreement.

Treating Bell and Parks as joint wrong-doers, the plaintiff claimed the right to recover from the latter as damages, said sum of $48,000.00. It also claims alternatively right of recovery of such sum from him by virtue of his contract with Rouse as damages for violation of its obligation by perpetration of the alleged fraud. A demurrer to the bill having been overruled, the cause was heard and decided on its merits.

Notwithstanding Parks was paid by Rouse for the estimate he made, he entered into an agreement with one McDaniel who was interested as agent of Bell in effecting a sale of the property by which he was to receive $700.00 for his assistance in

the consummation of the proposed sale. McDaniel paid him $500.00 at about the time he reported his estimate and he recovered the remaining $200.00 in an action before a justice of the peace later. The bill charges him with having accepted this sum of money as an inducement to make a false report or estimate. On the contrary, the defendant says the agreement with McDaniel was made after his estimate had been completed and reported. As to this, there is some conflict in the testimony.

In so far as the bill seeks a decree for money for damages for a mere wrong, done to the plaintiff, independent of any relation of contract, it states a cause of action not within the jurisdiction of a court of equity. A plain, clear and positive declaration of this proposition and express application of it by way of decision is found in *Laidley* v. *Laidley,* 25 W. Va. 525. Fraud is a well recognized ground of equity jurisdiction and the statement of this principle is often made without limitation, but it has its limitations nevertheless. If the fraud amounts to nothing more than a mere tort, usually expressed by the phrase, an injury by fraud and deceit, making a case in which the remedy at law is complete and fully adequate, there is no ground of equity jurisdiction. It is much easier to state the few instances in which courts of equity decline cognizance of causes of action arising out of fraud than to enumerate the great number of instances in which it does intervene. "A court of equity can give damages in no case where the party has a clear remedy at law; nor even when he has no such remedy, unless, perhaps, under very peculiar circumstances." *Meze* v. *Mayes,* 6 Rand. 660. "A court of equity will not entertain a bill filed for compensation of a breach of a contract or to recover damages for a fraudulent representation, unless other distinct grounds of equitable jurisdiction are alleged and proved and such compensation or damages are merely incidental to such distinct equitable jurisdiction." *Laidley* v. *Laidley,* cited.

If the defendant could be regarded as standing in a relation of contract with the plaintiff, lack of general equity jurisdiction is equally obvious. The fraud alleged amounted to no more than a breach of the contract of agency resulting in damage, making a cause of action for which an action at law is a

remedy just as efficacious as a bill in equity. "It may be stated, as a general proposition, that for breaches of contract and other wrongs and injuries cognizable at law, courts of equity do not entertain jurisdiction to give redress by way of compensation or damages, where these constitute the sole objects of the bill." 2 Story's Eq. Jur., sec. 794.

In neither instance, is the lack of jurisdiction supplied by the first paragraph of section 1 of chapter 106 of the Code, authorizing attachments in equity. Its terms, general in character and apparently giving right to attach in equity in all cases and for all sorts of demands, are to be taken distributively. They mean no more than that there may be an attachment in equity when the cause of action is one of equitable cognizance, and at law when the action is at law. The expression, of legislative will was put in these general terms for mere brevity and convenience. *Peyton & Co. v. Cabell,* 25 W. Va. 540.

The only exception in this respect is found in the last paragraph of section 1 of chapter 106, authorizing an attachment in a court of equity for a debt or claim, legal or equitable, whether the same be due or not, upon any of the grounds stated. In this clause, the words "debt or claim" do not include damages for a wrong. By the first paragraph of the section, an attachment is given in actions to recover such damages, but the last paragraph, conferring special equity jurisdiction, carefully omits claims arising out of tort. The first paragraph enumerates three classes of actions, those for claims or debts arising out of contracts and damages for wrongs. But two of these are enumerated in the last paragraph. The omission clearly signifies intent not to allow an attachment in equity for causes of action *ex delicto*. In the absence of terms expressly conferring it, such statutes are interpreted as not giving equity jurisdiction. *Dunlop & Co. v. Keith,* 1 Leigh 430.

As between the defendant and Rouse who employed him to make the estimate, the claim asserted by the bill might be regarded as one arising out of contract for which an attachment is authorized. But there was no such relation between the plaintiff and the defendant. As between them, there was no employment nor any contract. The employment was effected and the work done before the plaintiff came into legal existence. That contract was completed and ended. Nothing remained

to Rouse except a mere right of action, not in any sense an in-
cident or concomitant of the conveyance to the corporation. It
was a separate and distinct thing from what the corporation
acquired under the deed of January 30, 1907. Assuming it
to have been assignable, without deciding the question, that deed
did not operate as an assignment thereof, nor is there any ev-
idence of an assignment in any other form or by any other in-
strument. Corporations sometimes succeed to or take over
rights and contracts of promoters, but, strictly and technically,
contracts of promotors are not the contracts of the promoted
corporations. The latter merely take over the rights acquired
by the promoters. Many of the acts of the latter are thus
adopted or inure to the benefit of the corporation, but they are
acquired only as incident to property or contracts conveyed, as-
signed or made over to the corporations. In no instance, are
the acts done before the corporation is organized, the acts of
the corporation itself.

Seeing no error in the decree complained of, we affirm it.

*Affirmed.*