# CHARLESTON

MABIE v. MOORE *et al.*

Submitted February 23, 1915.   Decided March 9, 1915.

EQUITY—*Jurisdiction—Action Ex Delicto.*
> Point 3, syllabus, in *Swarthmore Lumber Co.* v. *Parks,* 72 W. Va. 625, re-examined and approved.

Appeal from Circuit Court, Randolph County.

Suit by Nancy A. Mabie against J. B. Moore and others. From decree for defendants, plaintiff appeals.

*Affirmed.*

*Talbott &.Hoover* and *Arnold & Arnold,* for appellant.

*C. W. Maxwell, H. G. Kump* and *C. H. Scott,* for appellees.

LYNCH, JUDGE:

By her bill, Nancy A. Mabie seeks to recover of defendants the value of timber wrongfully removed by them from her lands, and damages caused to other timber thereon resulting from such unlawful removal whereby she suffered injury because deprived of the profitable use and enjoyment of such lands for mill sites for manufacture of the timber thereon into lumber for market in the manner contemplated by her, that being a business in which she was engaged. To impound defendants' property to answer her demand, she sued out an attachment against them as nonresidents, and caused the writ to be levied on property owned by them in the county where the suit was brought. Defendants' demurrer being sustained and her bill dismissed, she has appealed.

The decree specifically assigns, as foundation therefor, the holding in ·*Swarthmore Lumber Co.* v. *Parks,* 72 W. Va. 625, that ''chapter 106, Code, authorizing attachments in equity,

confers upon courts of equity no jurisdiction as to causes of action *ex delicto''*. Plaintiff contends the conclusion reached in that case contravenes the express provisions of the statute, and conflicts with the construction given to it in *McKinsey* v. *Squires*, 32 W. Va. 41.

When viewed in the light of the facts and the statutory provisions on which they were predicated, these decisions are not inharmonious or inconsistent. In the McKinsey case, the court had jurisdiction independent of the proceedings by attachment. The bill charged defendant had fraudulently conveyed his property in order to defeat or delay recovery by plaintiff upon the cause of action averred; being a breach of a contract of marriage. The relief sought in the Swarthmore case was predicated upon fraudulent representations by defendant in the procurement of a contract for the purchase of timber; but, because plaintiff failed to show any contractual relation between it and defendant, it could not maintain the suit, though aided by attachment. In neither case did the writ give jurisdiction. It was merely auxiliary to the main purpose of the bill. It impounded defendant's property, that its proceeds might be applied to the satisfaction of plaintiff's demand when established by the court's decree.

It is further argued by plaintiff that, because the statute provides for an attachment in an action at law or suit in equity for the recovery of any claim or debt arising out of contract, or to recover damages for any wrong, equity does have jurisdiction upon attachment for any wrong or injury to person or property, if the trespasser is or becomes a non-resident and has attachable property within the state. The inevitable, logical conclusion to be drawn from the arugment advanced by plaintiff would be to confer on courts of equity jurisdiction to entertain suits for the recovery of damages for assault and battery, adultery, seduction, or any other wrong to the person or property of another, solely by virtue of an attachment sued out on any of the grounds mentioned in the statute. Such result evidently was not the purpose to be subserved by the enactment. If such was the purpose, wherein does the statute expressly declare it? It must not be inferred, unless the inference is manifest. Being in derogation of the common law, statutes authorizing proceed-

ings by attachment must be strictly construed. *Barksdale* v. *Hendree*, 2 Pat. & H. 43; *Delaplain* v. *Armstrong*, 21 W. Va. 211; *Comer* v. *Smith*, 36 W. Va. 188; *Baking Co.* v. *Bachman*, 38 W. Va. 84. Wherein, then, is such equitable jurisdiction so conferred? If at all, it is by §1, ch. 106. No other provision enables a court of equity to maintain a suit where before its enactment equity had not jurisdiction. Plainly, it does not enlarge jurisdiction in equity except as to a debt or claim not due. This provision was enacted, repealed and re-enacted at several different sessions of our legislature, and finally by the act of 1887.

While different in terms, in effect ours and the Virginia attachment proceedings are substantially similar; and, excepting so far as purely proceedings *in rem*, they are merely collateral as an aid to some other proceedings, as a warrant or summons before a justice, a suit in equity, or an action at law. Sams on Attachment 3.

At an early date in Virginia, the only process available for collection of a debt or claim against a foreign debtor having property within the state was by attachment in equity. The revised code of 1849 authorized attachments in actions at law where the debt or claim was recoverable by such action, and in equity only if recoverable in equity. *Railroad Co.* v. *Paine*, 29 Gratt. 502. The revisors of the code of 1819, in their report, after remarking the difficulty in understanding how jurisdiction by foreign attachment in equity arose and acknowledging that former acts of the Virginia assembly seemed to imply such jurisdiction as already subsisting, say: "It seems to us, however, to be anomalous, expensive and incongruous with the other provisions of law that there should be an attachment in equity in cases of nonresidents, for debts due, and the subject of action at law, while as to all other attachments for similar debts, and even for debts not yet due, there are numerous minute and detailed proceedings at law. As the law now is, a suit in equity is of necessity resorted to for the recovery of any legal demand against a nonresident. It seems to us there is no good reason for transferring a legal claim, a debt due by bond for example, to a court of equity, and thus subjecting both plaintiff and defendant, sometimes numerous defendants, to the expense and delays of a chancery

suit. All that the creditor wants, and all that justice or the policy of the attachment law requires, is to secure a lien on the property of his debtor. We propose, therefore, instead of the present system of attachments against nonresidents, to assimilate it to the proceedings to force an appearance by attachment, and against absconding debtors, etc., and to make all proceedings in all attachments substantially the same". Revisors' Report (1847) p. 757. And, as stated by Judge Moncure in the case cited, in Virginia "soon after that revision was made the former equitable remedy by foreign attachment was restored in regard to legal demands, but concurrently with the legal remedy given in such cases at the revision". · So that, it will be observed, equity assumed ·jurisdiction for the enforcement of contractual liabilities against nonresident debtors by attachment long before that remedy was available in actions at law. No additional authority was conferred on courts of equity by the provisions of⸀our statute, except as to debts not due. Where formerly equity had exclusive jurisdiction for enforcement of legal and equitable debts and claims due and payable, courts of law have concurrent jurisdiction with it only in certain classes of cases, except as noted.

But it is not to be presumed equitable jurisdiction was so far enlarged as to embrace causes of action at law. We perceive no such intention, either expressly or inferentially arising out of the statute. It meant only that where equity had theretofore exercised jurisdiction on either legal or equitable claims or demands, it could invoke the aid of an attachment to compel compliance with its decree or order. "Nonresidents and foreign corporations may be proceeded against either at law or in equity; at law in the case of a legal cause of action on a claim which is due, and in equity on ₑa legal or equitable cause of suit, whether due or not, provided that where the debt or other claim is not due there must be other grounds for attachment than such nonresidence". Sams on Attachment 91. Evidently, by the last clause, is meant the further averment required by the concluding clause of §1 of our statute, which is a counterpart of the Virginia statute on the same subject (Virginia Code 1887, ch. 141, §1, serial section 2959). Why should the statute do

more? The remedy at law is as expeditious and adequate as in equity.

Besides, it will be observed, the final paragraph of §1, ch. 106, limits attachments in equity to legal or equitable debts and claims. Impliedly, it excludes claims for damages for a wrong where recovery therefor is the only basis for the suit. Damages for a tort are not embraced in the Virginia statute, because such a claim is not cognizable in a court of equity. Sams on Attachment 55. From other discussion of the same subject, the author no doubt meant equity could not entertain a suit to recover damages for a wrong unless it had jurisdiction on other grounds. In other words, an attachment alone did not confer jurisdiction. It was virtually so held in a case cited by him, *Dunlop* v. *Keith,* 1 Leigh 430. That was a suit prosecuted in equity for damages growing out of misconduct by Keith as clerk of a court, and not for a debt or claim enforceable in equity, even when aided by attachment. So the court held in that case. To the same effect was *McKinsey* v. *Squires, supra;* for, as observed, equity did entertain plaintiff's suit to cancel, and did cancel, defendant's conveyance of his property, fraudulently made to defeat recovery against him for breach of contract of marriage. See 2 Min. Inst. 614. Section 1, read in its entirety, means only that an attachment may be sued out in equity where equity has jurisdiction, and at law where the law court has jurisdiction.

But plaintiff further argues that the word "claim", as used in the statute, embraces damages for a wrong. However, as used in statutes providing that no action shall be maintained against a city until the claim or demand is presented to the council for allowance, the word "claim" has been construed to include only claims arising out of contract. *Mason* v. *Ashland,* 98 Wis. 540; *Perkins* v. *Keith,* 58 N. Y. 323; *Barrett* v. *Mobile,* 129 Ala. 179; *Hunt* v. *Oswego,* 107 N. Y. 629. Or such as can in ordinary course be adjusted by the financial agents of the city. *Harrigan* v. *Brooklyn,* 119 N. Y. 630. So the word "claim" against a city, in a statute requiring them to be filed with the county clerk, means only a claim originating in contract express or implied. *Gregg* v. *Commissioners,* 32 Col. 357; *Miller* v. *Mullan,* 17 Idaho 28. There

are cases holding that, to authorize the issuance of an attachment, the relation of debtor and creditor must exist between plaintiff and defendant. *Hail* v. *Barnes,* 24 Neb. 782; *Day* v. *Bennett,* 18 N. J. L. 287. No such relation, however, obtains in the case of mere tort.

Associated, as it is, in the statute with the word "debt", the legal or equitable "claim" enforceable in equity is a liability of the same general class as debt, and not one sounding in damages merely. For only by procedure common to courts of law can damages for trespass, assault and battery, slander, malicious prosecution, and the like, be recovered. Of these equity clearly has no jurisdiction, except where other equitable relief is prayed. Generally, its jurisdiction is limited to debts or claims for the measurement of whose values there is a fixed legal and definite pecuniary standard, and not those having no such standard, which are submitted to the sound discretion of the jury trying the case, excepting always those cases wherein other grounds of purely equitable relief warrant jurisdiction. 2 Min. Inst. 614.

Construing a statute allowing an attachment in actions at law upon a demand, "whether liquidated or not, arising upon a contract or a judgment or decree", requiring plaintiff to specify the amount of his "claim" and the grounds therefor, the court in *Saddlesvene* v. *Arms,* 32 How. Pr. (N. Y.) 280, said that the word "claim" is the equivalent of a debt or demand arising out of the express or implied terms of a contract.

On the theory that a tort may be waived, plaintiff no doubt could have sought and recovered damages by any appropriate action at law. And, had she averred grounds of equitable cognizance in addition to damages as compensation for the injury done to her lands, she doubtless could also have maintained her bill in equity, aided by an attachment. But, where no such grounds are averred, there is no jurisdiction in equity to recover damages for any tortious act resulting injuriously to the person or property of another, either with or without the purely ancillary proceeding by attachment.

As appellant declined to amend, the decree, for reasons stated, must be, and it is, affirmed.

*Affirmed.*