# CHARLESTON.

. PIEDMONT GROCERY CO. v. A. F. HAWKINS.

Submitted January 14, 1919.   Decided January 21, 1919.

1. CORPORATIONS—*Appropriation by Officer—Remedy.*

   The appropriate action to recover money improperly appropriated to his own use by an officer of a corporation is assumpsit for money had and received.   (p. 181).

2. EQUITY—*Jurisdiction—Action—Ex Contractu—Attachment.*

   Section 1 of ch. 106 properly construed confers upon courts of equity jurisdiction to entertain suits to recover on causes of action *ex contractu* where an attachment, supported by proper grounds therefor, is sued out as a basis of such jurisdiction. (p. 181).

3. ATTACHMENT—*"Fraudulently Contracting a Debt"—"Incurring a Liability"—Statute.*

   An officer of a private corporation entrusted with its funds and property who improperly converts the same to his own use is guilty of fraudulently contracting a debt or incurring a liability to such corporation which will be the basis of an attachment under the provisions of § 1 of ch. 106 of the Code.   (p. 181).

4. SAME—*Grounds—Affidavit—Statement in Disjunctive.*

   Where an attachment is sued out and reliance is had upon two or more distinct grounds for support thereof they should be joined in the conjunctive, but where only one ground of attachment is relied upon and two or more phases of the same fact which constitutes such ground are stated, the joining of such different phases in the disjunctive will not invalidate the attachment affidavit.   (p. 183).

5. SAME—*Grounds—Affidavits—Disjuctive.*

   An attachment sued out upon the eighth ground given by § 1 of ch. 106 of the Code, that the defendant fraudulently contracted the debt or incurred the liability for which the action or suit is about to be, or is brought, will not be quashed because the attachment affidavit states that the debt was fraudulently contracted or the liability incurred.   This is but the declaration of two phases of the same fact which constitutes the basis of the attachment.   (p. 185).

Appeal from Circuit Court, Mineral County.

Suit in equity with attachment by the Piedmont Grocery Company against A. F. Hawkins and others.   Demurrer to

bill and motion to quash the attachment sustained and suit dismissed, and plaintiff appeals.

*Reversed and remanded.*

*F. C. Reynolds* and *H. G. Fisher,* for appellant.
*Arthur Arnold,* for appellees.

RITZ, JUDGE:

The defendant was for many years the treasurer of the plaintiff, and it is alleged that during the time he was such officer, of the money coming into his hands he improperly appropriated large sums thereof to his own use, and that likewise during said time he, without authority, converted to his own use certain goods of the plaintiff. Upon the discovery of this alleged improper conduct on the part of defendant the plaintiff brought this suit in equity, and at the same time sued out an attachment against the property and effects of the defendant, upon the ground that he fraudulently contracted the debt or incurred the liability set up. A demurrer to the bill and motion to quash the attachment were sustained, and the suit dismissed.

The ground of the demurrer is that the plaintiff's demand is a purely legal one of a tortious nature not cognizable in equity, even when accompanied by an attachment, and the grounds for quashing the attachment are that the facts set up in the affidavit do not show that the liability was fraudulently incurred, and further that the affidavit is void for uncertainty, inasmuch as it alleges that the defendant fraudulently contracted the debt or incurred the liability, so that it is impossible for the defendant to determine whether it is claimed that he contracted a debt or incurred a liability.

The jurisdiction in equity is sought to be sustained solely upon the ground that it is conferred by § 1 of ch. 106 of the Code giving courts of equity jurisdiction of suits where an attachment is ancillary thereto. As this statute has been construed by this court in the cases of *Swarthmore Lumber Co. v. Parks,* 72 W. Va. 625, and *Mabie v. Moore,* 75 W. Va. 761, jurisdiction is only conferred upon courts of equity to entertain such suits when the cause of action is one *ex*

*contractu.* In those two cases it is asserted that the juris-
diction does not exist where the cause of action is *ex delicto.*
After reviewing the history of our statute, we think the doc-
trine of those decisions is correct, and that wherever a
plaintiff has a cause of action upon which he can maintain a
suit in form *ex contractu* he may, if he have grounds there-
for, sue out an attachment and prosecute a suit in equity.
If, however, his cause of action is one upon which he must
sue in tort equity will not have jurisdiction. The defendant
insists that the cause of action set up in the bill is one *ex
delicto,* while the plaintiff asserts that it is in its nature *ex
contractu.* The charge in the bill and in the attachment
affidavit is full and complete as to the items of money and
property appropriated by the defendant, and it seeks to re-
cover a judgment for the amount of money so appropriated
and the value of the property. It is contended by the plain-
tiff that this is purely an action on contract, that when the
defendant received into his custody money or property of
the plaintiff, as its officer, there was an implied contract that
he would account for the same and return it when required
so to do, and that his failure to do this renders him liable in
an action for money had and received. For the defendant it
is contended that inasmuch as the allegations are that he
is guilty of a criminal offense in converting this money and
property to his own use, his acts are necessarily wrongful
acts, and that the suit is no more than an action for damages
for his wrongful conduct. It seems to be very clearly estab-
lished by the authorities that for money misappropriated, or
even for money stolen, an action of assumpsit for money had
and received is the appropriate remedy. An act of misap-
propriation in the case of one entrusted with funds in an
official or fiduciary capacity raises an implied obligation
on his part to repay such funds, and even where money has
been stolen it is uniformly held that the owner of the money
may sue in assumpsit to recover the same. In Cooley on
Torts, § 109, the author says: "No question is made of this
doctrine, where, as a result of the tortious act, the defend-
ant has come into possession of money belonging to the plain-
tiff. The law will not permit him to deny an implied prom-

ise to pay this money to the party entitled.'' This text is
fully supported by the authorities cited in the note. In the
case of *Walker* v. *Norfolk & Western Railway Co.*, 67 W. Va.
273, this court held that an action of assumpsit would lie
against one who appropriates the property of another to re-
cover the value thereof. In that case the plaintiff, a contrac-
tor, left a pump stored temporarily on the right-of-way of
the defendant, and the defendant appropriated this pump
to its own use, and a recovery for the value thereof in an ac-
tion of assumpsit was allowed. Many cases might be cited to
support the doctrine that for money wrongfully converted
or stolen an action of assumpsit will lie to recover against
the wrongdoer. *Gould* v. *Baker*, 12 Tex. Civ. App. 669 ;
*Howe* v. *Clancy*, 53 Me. 130; *Shaw* v. *Coffin*, 58 Me. 254 ;
4 Am. Rep. 290; *Spencer* v. *Towles*, 18 Mich. 1; *Beardslee* v.
*Horton*, 3 Mich. 560; *Royce* v. *Oakes* (R. I.) 39 L. R. A. 845;
*Downs* v. *Baltimore City*, 111 Md. 674. The fact that the
defendant may be guilty of a criminal offense in misappro-
priating the fund sought to be recovered in no way changes
his civil liability to the plaintiff. If there were no statute
making the misappropriation of these funds criminal, could
it be doubted for a moment that there was an implied con-
tract to repay them? The defendant would stand in no dif-
ferent position from the man who had borrowed money from
another with an express promise to repay it. The law will
not permit him to secure the funds of another in his capacity
as agent, and then use them for himself without also rais-
ing a promise upon his part to repay. We are clearly of
opinion that the cause of action set up in this case is one
*ex contractu*, and such as gives jurisdiction to a court of
equity to entertain a suit under the provisions of § 1 of ch.
106 of the Code, where an attachment is sued out upon suffi-
cient grounds.

But the defendant insists that no ground for the attach-
ment sued out in this case is shown by the affidavit, and fur-
ther that the affidavit is fatally defective. The affidavit was
sued out upon the eighth ground specified in § 1 of ch. 106,
and that is that the defendant fraudulently contracted the
debt or incurred the liability for which the action or suit is
brought. His contention is that the conversion of this money

to his own use, he having come into possession of it lawfully, does not make him guilty of any fraud in incurring the liability or contracting the debt set up in the bill. It is quite true that so far as the funds embezzled are concerned they came into the possession of the defendant lawfully; so far as the goods appropriated by him to his own use are concerned, this cannot be said. The allegation in this regard is that he abstracted certain goods from the store of the plaintiff, used them himself, and charged the value thereof to various customers of the plaintiff, seeking in this way to conceal his own misconduct. But can the fact that he secured possession of the funds lawfully make any difference? So long as he retained the lawful possession of them as an officer of the company there was no cause of action against him. The cause of action set up in this case arose when he appropriated these monies to his own use, and can it be said that the deliberate taking of another's funds held for a particular purpose, and applying them to an entirely different purpose, is not a fraudulent act? It seems to us that this is clearly fraudulent. The defendant cites the case of *Goss* v. *Board of Commissioners,* 4 Col. 468, in support of his contention, and that case does in a measure lay down the doctrine contended for by him, but a reading of it shows that the decision is largely based upon an entirely different proposition. In that case the party from whom the money was sought to be recovered was not a direct agent of the plaintiff, but was an employe of the treasurer of the plaintiff, and the court held that the extent of the plaintiff's rights were fixed by its contract with the treasurer, and recovery on the treasurer's bond was the appropriate remedy for it to pursue. We are not prepared, however, to approve the doctrine laid down in that case that where a deputy or employe of the treasurer misappropriates funds entrusted to him as such employe the owner of such funds cannot sue in an action for money had and received to recover a judgment for the same. In the case of *Downs* v. *Baltimore City,* 111 Md. 674, it is held that the wrongful conversion of funds by an officer constitutes fraudulently contracting an obligation which will sustain an attachment, and the reasoning of the court in that case seems

to us to be entirely sound. Many cases are cited in support of the text at page 78 of 6 Cor. Jur. holding that attachment lies for goods or money embezzled or stolen, or obtained by other species of fraud. The doctrine of that text is also authority for the proposition that an action of assumpsit is an appropriate remedy in such case.

The remaining ground for quashing the attachment is that the statement "fraudulently contracted the debt" is joined in the disjunctive with the statement "incurred the liability." Does this make the attachment affidavit bad? It is quite true that where inconsistent or separate grounds of attachment are joined in the same affidavit they must be joined in the conjunctive, for the reason that if the disjunctive is used the defendant is not apprised of which one of the grounds is relied upon; and then, too. the affidavit may be said not to contain an allegation that any ground exists, for the reason that the affiant only swears that one or the other of two or more grounds exist, but does not say which one. But this doctrine has no application where the statement contains but two or more phases of the same fact, or different facts of the same nature which constitute a single ground for the attachment. So it has been held that an affidavit is not defective because it states in the alternative different modes of effecting a stated purpose or intent, especially where in so doing it follows the language of the statute. 6 Cor. Jur. 136; 2 R. C. L., 853; *Sandheger* v. *Hosey*, 26 W. Va. 221; Shinn on Attachment & Garnishment, § 146; Drake on Attachments, § 102; Waples on Attachment & Garnishments, § 136. In this case the ground of attachment relied upon is that specified as the eighth ground in § 1, ch. 106, and the fact that the defendant's alleged liability is charged to have arisen by fraudulently contracting the debt or incurring the liability is but two ways of stating the same substantive proposition. and under all of the authorities does not vitiate the affidavit.

Our conclusion therefore is to reverse the decree of the circuit court of Mineral county and remand the cause for further proper proceedings.

*Reversed and remanded.*