LAKE O'WOODS CLUB *v.* CHARLES P. WILHELM, *Judge,*
*etc. et al.*

(No. 9560)

Submitted January 12, 1944. Decided February 8, 1944.

*Robt. T. Donley* and *Richard E. Davis,* for petitioner.
*J. V. Gibson,* for respondents.

Fox, JUDGE:

This is an original jurisdiction proceeding in which the petitioner seeks a writ prohibiting the Circuit Court of Preston County from further proceeding to enforce the alleged lien of an attachment issued out of said court in the equity suit of Ray Swaney against Mark A. Rigg and others, by the sale of a tract of 533.6 acres of land, situated in Preston County, now the property of the petitioner, but levied on as the property of Mark A. Rigg and Sarah Rebecca Rigg. The petitioner is the purchaser of said land pending the suit in which said attachment was issued and levied. The crucial question is whether equity had jurisdiction to entertain the suit aforesaid. If it had such jurisdiction, then, if grounds existed therefor, an attachment could properly issue; otherwise not. The controversy arose out of a sale of standing timber made by Mark A. Rigg and Sarah Rebecca Rigg to G. M. Benson, who later conveyed the same to Summit Lumber Company, which in turn sold said timber to Ray Swaney, and Riggs, subsequent to the conveyance of the timber, conveyed the land on which it was located, and the petitioner herein became the owner thereof. Mark A. Rigg and Sarah Rebecca Rigg will be hereinafter referred to in this opinion as "Riggs", in the plural; Ray Swaney will be referred to as "Swaney"; and Lake O'Woods Club will be referred to as the "petitioner". To reach a correct understanding of the issue presented, a statement of the events leading up to the issuance of the attachment is necessary.

On and after July 31, 1928, Riggs claimed to be the owners of the tract of 533.6 acres under a deed from Charles E. Phillips to them, bearing said date. At that time one Charles N. Ryan claimed to be the owner of 100 acres of land located within the boundaries of the 533.6-acre tract, of which claim, it is averred, Riggs had notice as early as the year 1929, when they had their lands surveyed. In 1930 Swaney, a lumberman, entered into an arrangement with one G. M. Benson and the Summit Lumber Company, by which Benson agreed to

purchase for Swaney a tract of 200 acres of standing timber, located within the boundaries of the 533.6 acres of Riggs land, the said timber to be conveyed to the Summit Lumber Company, and to be turned over by it to Swaney for operation, with some understanding that the lumber manufactured therefrom was to be marketed by said Lumber Company. On October 27, 1930, Riggs conveyed to G. M. Benson, without warranty of title, 200 acres of standing timber, located within the 533.6-acre tract, for a consideration of two thousand dollars, which was paid. Two days later, on October 29, 1930, Benson conveyed said timber to the Summit Lumber Company, and later the Lumber Company sold the same to Swaney by a contract in writing not recorded. Some time passed and, in 1934, Swaney was operating the timber on the 200-acre tract, and on that part thereof claimed by Ryan. A suit in equity was instituted by Ryan against Swaney to enjoin the further cutting and removal of timber from the land claimed by Ryan, and seeking to recover damages, and, Swaney being a nonresident, an attachment was issued and levied on his property located in this State. The result of this litigation, ending by a perpetual injunction decree in February, 1936, was to establish the title of Ryan to the timber on the 100 acres of land claimed by him, amounting, as alleged, to approximately fifty per cent of the timber sold by Riggs to Benson, and to deprive Swaney thereof. During the progress of this litigation, the time limit on the right to remove the timber conveyed by Riggs was about to expire, such time limit being five years from October 27, 1930, and it is alleged in both the original and the amended and supplemental bills filed in the suit of Swaney against Riggs, that it was verbally agreed by Riggs that Swaney should have further time to remove the timber on that portion of the 200-acre tract not claimed by Ryan. Later Swaney was notified by Riggs, and by their grantees, not to remove the timber on the land to which this alleged extension of time related. After the entry of the final decree in the case of Ryan against Swaney, and Swaney had been no-

tified not to remove the timber as aforesaid, he, Swaney, on July 22, 1936, instituted his suit in equity in the Circuit Court of Preston County against Riggs, G. M. Benson, and the Summit Lumber Company, a corporation, in which he averred that the defendants, Riggs, with knowledge of the claim of Ryan aforesaid, "fraudulently and with the intention of defrauding said Benson and said Charles N. Ryan sold and conveyed 200 acres of timber within the extended survey as made by him in 1929, and that he knew and had been advised that a part of the same was on the lands claimed by Ryan * * *", thus averring a fraudulent act, and he sought a decree for one thousand dollars paid for timber to which Ryan had title, and damages to the amount of approximately two thousand dollars growing out of court costs, attorneys' fees, damages for delays, and loss of timber by reason of the expiration of the time for removal thereof. On the same day Swaney filed in his suit an affidavit for an attachment, and, on this affidavit, the attachment, the enforcement of the lien of which is herein sought to be prohibited, was issued, and, on July 24, 1936, levied on the Riggs tract of 533.6 acres. The attachment affidavit is lengthy and sets out the various matters hereinabove stated and, among other things, states the fact that the plaintiff had instituted his suit which he stated was a suit "for the recovery of damages for a wrong", and then sets up the items of damages, one being the price of one-half of the timber, or one thousand dollars, and items of costs, attorneys' fees, and damages for delay in operation, aggregating two thousand dollars, and stating that he was entitled to recover in said suit at least the sum of three thousand dollars. The grounds for the attachment are stated to be: (1) The nonresidence of Riggs; (2) that Riggs fraudulently sold and conveyed to Benson the timber on land owned by Ryan; (3) that the Riggs were attempting to convert their property, or a material part thereof, in this State into money, with intent to defraud their creditors; and (4) that Riggs had disposed of certain interests in said lands owned by them, the exact interest not being known, with intent to de-

fraud their creditors, especially plaintiff. The material facts relied upon to show the existence of the grounds for attachment are stated to be: (1) That Riggs resided in the State of Pennsylvania; (2) that the several matters hereinabove set out with reference to the sale of the 200 acres of timber and the agreement to extend the time to remove the same; and (3) that Riggs were attempting to sell the real estate owned by them in this State.

The prayer of the original bill in the suit in which the attachment aforesaid was issued is as follows:

"Plaintiff therefore prays that the real estate so owned by said Mark A. Rigg and Sarah Rebecca Rigg shall be sold by order of the court, and after the payment of the costs of this suit, that then a sufficient amount of the proceeds of said sale be paid to this plaintiff for the damages herein set out; that the plaintiff be decreed a lien on said real estate for said damages, and that the court grant to this plaintiff such other relief, both general and special as to equity may seem meet, and as in duty bound he will ever pray".

An amended and supplemental bill filed in the suit contains the identical prayer. The suit is purely one to recover damages, and there is nothing in either the original or the amended and supplemental bills on which any other character of relief could be granted, under the prayer for general relief. Riggs appeared in the case and interposed demurrers to both the original and the amended and supplemental bills. On March 12, 1940, the demurrer to the original bill was sustained, with leave to amend, whereupon an amended and supplemental bill was filed, and the demurrer thereto was overruled on February 11, 1942. The amended and supplemental bill states the same case as that stated in the original bill, and prays for the identical relief. It may go into more detail as to the allegations of fraud, but is not otherwise substantially different from the original bill.

On August 27, 1936, after the issuance and levy of the attachment aforesaid, Riggs conveyed the tract of 533.6

acres of land, on which the attachment was levied, to H. E. Thomas and R. E. Jackson, and, through various deeds and other proceedings, the title to said land has become vested in the petitioner, Lake O'Woods Club, a corporation. Of course, it holds title thereto subject to such rights, if any, as Swaney has acquired under the lien of his attachment. If the attachment was void by reason of lack of jurisdiction of the court to issue it, as contended by petitioner, then no lien was created on the tract of 533.6 acres by levying the same thereon, and the court never had, and does not now possess, jurisdiction to enforce such alleged lien by a sale of the land covered thereby, even though the parties proceeded against may have made a general appearance in court, and subjected themselves to its jurisdiction, to the extent that a personal decree against them might be entered. Even if the case were one cognizable in a court of equity, there could not ordinarily be a sale of the real estate involved in the alleged fraud merely on a personal decree against one or more of the participants in the fraud. The petitioner, while a purchaser *pendente lite* has title to the land purchased, and but for the attachment, so far as this record discloses, is the owner thereof free from the claims of Swaney. We do not have here a case of fraudulent conveyance, which would undoubtedly give the court jurisdiction to sell property involved in a fraudulent transaction. We do have a case where the plaintiff seeks, in a court of equity, to recover damages for an alleged wrong done him by fraudulent representations to his prejudice. If a court of equity has jurisdiction to entertain such suit, then we think it may attach the property of the defendant, proper grounds therefor existing. If it does not have such jurisdiction, then, of course, no attachment may issue, even though grounds for attachment might exist, if the case presented were one cognizable in a court of equity. For example, here the parties accused of fraud were nonresidents of this State owning property within its limits. If the remedy of the defrauded party was complete and adequate at law, he could have

proceeded at law and sued out an attachment on the sole ground of nonresidence of the defendant; and he could have done the same thing if the case were one of which a court of equity could take jurisdiction. In other words, courts, whether in law or in equity, may issue attachments in cases within their jurisdiction, where proper grounds exist therefor.

The suit of Swaney against Riggs in which the attachment issued was purely one to recover damages growing out of a tort, to-wit, an alleged fraudulent misrepresentation as to the ownership of two hundred acres of standing timber. A conveyance of standing timber is a conveyance of an interest in real estate. *Brown* v. *Gray*, 68 W. Va. 555, 70 S. E. 276; *Gibson* v. *Stalnaker*, 87 W. Va. 710, 106 S. E. 243. There being no warranty of title in the deed executed by Riggs to Benson, there arose no contractual relationship between the parties to said deed under which the vendee or his successors in title could recover for failure of title, *Baker* v. *Letzkus*, 116 W. Va. 647, 182 S. E. 761, unless under the theory of *Grocery Co.* v. *Hawkins*, 83 W. Va. 180, 98 S. E. 152, an implied promise to repay the money which Benson was induced to pay Riggs grew out of the fraud alleged, and even then the amount of recovery would be limited to the purchase price of the timber which was the subject of the fraudulent representation, although we might, in that situation, be met with the claim that there was no privity of contract between Riggs and the party who succeeded to any claim Benson might have growing out of the transactions. But this is not the theory of the Swaney suit. He seeks recovery for a tort, not on any implied promise to pay, and he includes in his claim items of damage resulting from the fraud, as to which no promise could possibly arise through implication or otherwise. A party may not in the same suit or action seek to recover for a tort and on a contract. He must waive either the tort or the contract, and proceed on a single theory. Unbounded confusion would arise if the rule were otherwise. Therefore, when Swaney elected to pursue his tort remedy, he

abandoned the theory of recovery on contract, even if he could have so proceeded as to any part of his claim.

But, says Swaney, the fraud practiced by Riggs on Benson, his predecessor in title, gives a court of equity jurisdiction, even if the demand be purely compensatory in nature, and even if there be a plain, adequate and complete remedy at law, and the wrong practiced on Benson was transferred to Swaney by the sale of the timber to him through Summit Lumber Company. We do not so understand the law. In *Swarthmore Lumber Co.* v. *Parks,* 72 W. Va. 625, 79 S. E. 723, this court held:

> "Fraud is a well recognized ground of equity jurisdiction and the statement of this principle is often made without limitation, but it has its limitations nevertheless. If the fraud amounts to nothing more than a mere tort, usually expressed by the phrase, an injury by fraud and deceit, making a case in which the remedy at law is complete and fully adequate, there is no ground of equity jurisdiction."

*Laidley* v. *Laidley,* 25 W. Va. 525, is cited in support of this proposition. In the very nature of things, this must be the true rule. The law affords relief against various species of misrepresentation and fraud, in actions of trespass on the case, and, in certain types of cases, in assumpsit. Where that remedy exists, and it is adequate and complete, equity does not have jurisdiction. If other grounds for equitable jurisdiction exist, such as a fraudulent conveyance or transfer of property, such as was considered in *McKinsey* v. *Squires,* 32 W. Va. 41, 9 S. E. 55, equity will take jurisdiction to enforce a purely legal demand, for the reason that the remedy at law is neither adequate nor complete.

If Swaney had a right of action based on the alleged fraud practiced on Benson, a question we do not decide, he had a plain, adequate and complete remedy at law, and equity did not have jurisdiction to entertain his suit, as the same was presented. This being true, the attachment sued out and levied on the 533.6 acres was void, and

cannot be made the basis for any proceeding to sell said land thereunder. If such jurisdiction does not exist, then it follows that resort may be had to writ of prohibition to prevent the exercise of any pretended jurisdiction.

The petitioner contends that, "An attachment suit cannot be prosecuted in a court of equity when it is based upon a claim sounding in tort", and cites Code, 38-7-1; *Swarthmore Lumber Co.* v. *Parks, supra; Mabie* v. *Moore,* 75 W. Va. 761, 84 S. E. 788; *Piedmont Grocery Co.* v. *Hawkins, supra*. This contention may be too broad. Suits sounding in tort, but embracing elements warranting equity jurisdiction may be imagined. The cases cited are authority for the proposition that our attachment statute, Code, 38-7-1, which provides, "In any action or proceeding at law or suit in equity for the recovery of any claim or debt arising out of contract, or to recover damages for any wrong", the plaintiff may have an order of attachment, does not warrant a court of equity in issuing an attachment for a purely legal demand arising out of tort.

The first case decided by this Court on that point was *Swarthmore Lumber Co.* v. *Parks, supra*. That case involved an alleged fraudulent misrepresentation as to the quantity of timber on a certain boundary of land. It was held in point 1 of the syllabus:

"A court of equity will not take cognizance of a fraud, working injury as a mere tort."

and in point 3 it was held:

"Chapter 106 of the Code, authorizing attachments in equity, confers upon courts of equity no jurisdiction as to causes of action *ex delicto*."

Chapter 106 of the Code, as it was at the date of that decision, is now embodied in Article 7 of Chapter 38 of the Code, 1931. Then came the case of *Mabie* v. *Moore, supra,* where the Court was asked to reexamine the *Swarthmore* case, with special relation to the former holding in *McKinsey* v. *Squires*. The Court reexamined the *Swarthmore* case, and reaffirmed and approved its holding therein.

The *Mabie* case was one where the plaintiff sought to recover the value of timber wrongfully removed from her lands and damages caused to other timber thereon, resulting from such unlawful removal, and her bill was dismissed. The Court took some pains to support its former decision in the *Swarthmore* case, and we think its reasoning deserves quotation:

> "Besides, it will be observed, the final paragraph of §1, ch. 106, limits attachments in equity to legal or equitable debts and claims. Impliedly, it excludes claims for damages for a wrong where recovery therefor is the only basis for the suit. Damages for a tort are not embraced in the Virginia statute, because such a claim is not cognizable in a court of equity. Sams on Attachment 55. From other discussion of the same subject, the author no doubt meant equity could not entertain a suit to recover damages for a wrong unless it had jurisdiction on other grounds. In other words, an attachment alone did not confer jurisdiction. It was virtually so held in a case cited by him, *Dunlop* v. *Keith,* 1 Leigh 430. That was a suit prosecuted in equity for damages growing out of misconduct by Keith as clerk of a court, and not for a debt or claim enforceable in equity, even when aided by attachment. So the court held in that case. To the same effect was *McKinsey* v. *Squires,* supra; for, as observed, equity did entertain plaintiff's suit to cancel, and did cancel, defendant's conveyance of his property, fraudulently made to defeat recovery against him for breach of contract of marriage. See 2 Min. Inst. 614. Section 1, read in its entirety, means only that an attachment may be sued out in equity where equity has jurisdiction, and at law where the law court has jurisdiction."

The case of *Piedmont Grocery Co.* v. *Hawkins, supra,* reaffirms the position of the Court as taken in the *Swarthmore* and *Mabie* cases. Being bound by these decisions, we see no escape from the conclusion that there being no jurisdiction in a court of equity to entertain Swaney's claim, in the form presented, no lien was created on the

Riggs land now owned by the petitioner, by the issuance of the attachment levied as aforesaid, and any attempt to sell said land under such alleged lien should be prohibited.

If the Circuit Court of Preston County is without jurisdiction to enforce the pretended lien, then the right of petitioner to invoke the writ of prohibition prayed for is clear. It could have petitioned to be made a party to the pending suit, and, if admitted a party, have made the same defense to Swaney's claim under the attachment as it now seeks to make through resort to prohibition; but it was not required to do so. Code, 53-1-1, provides, "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers", and the following cases support the right to invoke the writ regardless of other remedies. *Norfolk & W. R. Co.* v. *Pinnacle Coal Co.*, 44 W. Va. 574, 30 S. E. 196; *Weil* v. *Black*, 76 W. Va. 785, 86 S. E. 666; *Jennings* v. *McDougle*, 83 W. Va. 186, 98 S. E. 162; *Midland Investment Corp.* v. *Ballard*, 101 W. Va. 591, 133 S. E. 316. It may be invoked "by any person whose rights may be injuriously affected by the action he seeks to prevent". *Hastings* v. *Finney*, 119 W. Va. 301, 193 S. E. 444. While the writ of prohibition is purely jurisdictional, and cannot be used to correct errors which may be reached through writ of error or by appeal, nevertheless, where, because of want of jurisdiction, it clearly appears that a valid judgment or decree cannot be rendered in a case, prohibition may issue though a writ of error or appeal to the final judgment or decree, or other remedies, may be available. *Wolfe* v. *Shaw*, 113 W. Va. 735, 169 S. E. 325. Where lack of jurisdiction is clear, and it is apparent that no legal judgment or decree can be entered in a case, the writ of prohibition is available regardless of other remedies. This rule is based upon the simple reasoning that a defendant should not be required to litigate a suit

or action in which the court can clearly see that it can at no time enter a legal judgment or decree. We had this proposition before us in *White Sulphur Springs, Inc.* v. *Ripley,* 124 W. Va. 486, 20 S. E. 2d 794. In other cases we have attempted to limit the scope of the writ, where the relief sought thereby was available in the case out of which the application arose. *Dankmer* v. *Fuel Co.,* 121 W. Va. 752, 6 S. E. 2d 771. In *Morris* v. *Calhoun,* 119 W. Va. 603, 195 S. E. 341, we discussed the power of this Court in relation to writs of prohibition, particularly as to their availability in cases where other types of relief against a claim were available in a pending suit. It may be that the Court has not been entirely consistent, for, on the one hand we have recognized the writ as one of right in a proper case; while on the other hand we have sought to discourage the use of the writ in cases where the same relief could be obtained by ordinary proceedings in pending suits. Here we think the right of the petitioner to avail itself of the writ is clear.

The petitioner's prayer is that the Circuit Court of Preston County be prohibited "from proceeding further in said chancery cause, or from taking any action to enforce the alleged lien of said attachment, or from entering any decree of sale of the real estate levied on under said attachment, or otherwise taking any action in relation thereto prejudicial to the petitioner, and also prohibiting the said Ray Swaney from taking any action in said chancery suit to enforce said alleged attachment lien". We refuse the writ in so far as it prays that the circuit court be prohibited "from proceeding further in said chancery cause * * *". Petitioner can only be concerned in preventing the enforcement of the alleged attachment lien. Whether Swaney was entitled to any relief against Riggs in the pending chancery cause, we do not decide, because that issue was not presented, except indirectly, and has no bearing upon the attachment.

The writ will be awarded as prayed for to the extent indicated above, and the Circuit Court of Preston County

will be prohibited from taking any action to enforce said lien of said attachment or from entering any decree of sale of the real estate levied upon under said attachment, or otherwise taking any action in relation thereto prejudicial to the petitioner, and also prohibiting the said Ray Swaney from taking any action in said chancery suit to enforce said alleged attachment lien.

*Writ awarded.*